**STATE of Minnesota, Appellant,**

v.

**Carlos Maurice HARRIS, Respondent.**

**A15-0711**

Supreme Court of Minnesota.

Filed: May 24, 2017

---

5. To the extent that Mosley claims the district court erred in admitting the in-court identification and CSC charge into evidence, those claims are barred under the rule set out in *Knaffla*, 243 N.W.2d at 741. Under the *Knaffla* rule, "once a direct appeal has been taken, *all claims raised in the direct appeal* and all claims that were known *or should have been known* but were not raised in the direct appeal are procedurally barred." *Colbert v.*

*State*, 870 N.W.2d 616, 626 (Minn. 2015) (first emphasis added). The in-court identification claim is barred by the *Knaffla* rule because it was raised on direct appeal. *Mosley*, 853 N.W.2d at 796-98. Although the claim relating to the CSC charge was not raised on direct appeal, it is barred by the *Knaffla* rule because Mosley knew or should have known of this claim at the time of his direct appeal.

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenney, Assistant County Attorney, Minneapolis, Minnesota, for appellant.

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, Saint Paul, Minnesota, for respondent.

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, Saint Paul, Minnesota, for amicus curiae Minnesota Attorney General.

Daniel J. Koewler, Ramsay Law Firm, PLLC, Roseville, Minnesota, for amicus curiae Minnesota Association of Criminal Defense Lawyers.

Robert Small, Executive Director, Minnesota County Attorneys Association, Saint Paul, Minnesota; and Nicholas A. Hydukovich, Assistant Washington County Attorney, Stillwater, Minnesota, for amicus curiae Minnesota County Attorneys Association.

Robin M. Wolpert, Sapientia Law Group, PLLC, Minneapolis, Minnesota; and Charles F. Webber, Faegre Baker Daniels LLP, Minneapolis, Minnesota, for amicus curiae Minnesota State Bar Association, Criminal Law Section.

## OPINION

ANDERSON, Justice.

A jury found respondent Carlos Harris guilty of possession of a firearm by an ineligible person. The court of appeals reversed, concluding that the evidence presented at trial was insufficient to support the jury's verdict. Appellant State of Minnesota petitioned for review, asserting that the court of appeals erred in its application of the law and asking us to abandon the separate standard of review for convictions based on circumstantial evidence. We conclude that the court of appeals correctly applied the law and we decline the invitation to overrule our precedent. We therefore affirm the court of appeals.

## FACTS

On March 4, 2014, a police officer working with a United States Marshals task force was looking for J.A. based on an arrest warrant. The officer began surveillance in an area where information indicated that J.A. could be found. The officer observed J.A. get into the passenger seat of a Cadillac car and watched the car drive away. Police later learned that Harris was driving the car; J.A. was in the front passenger seat; and another person, K.E., was seated behind Harris. They also learned that the car was owned by Harris's brother.

The officer followed the car in an unmarked police vehicle. He did not immediately attempt to stop the car because he was concerned about possible danger to bystanders and was waiting for additional police support.

Eventually, after additional law enforcement arrived, the officer activated his lights and siren in an attempt to stop the car. The emergency lights were more noticeable than normal and were described as lighting up the officer's vehicle "like a Christmas tree." The car continued traveling between 30 and 35 miles an hour for approximately three blocks. The officer saw movement inside the car. As the car

approached the freeway, the officer feared the occupants might attempt to flee, so he pulled his vehicle alongside the car, causing it to stop at the curb.

Several police officers then approached the car and ordered the occupants to show their hands. Although Harris initially complied with this command, at some point he lowered his hands below the window. However, when commanded to raise his hands again, he did so. Harris was removed from the car first.

J.A. was less cooperative. When police told J.A. to show his hands, J.A. refused to do so. He also made furtive movements in his lap and near the glove compartment. Eventually, J.A. complied with police commands to get out of the car; but after getting out of the car, J.A. reached his hand into the car again.

The backseat passenger, K.E., was the last person removed from the car. Police then secured Harris, J.A., and K.E. in three separate squad cars and inspected the Cadillac to ensure that nobody else was hiding in it. When police looked up, to the right of, and slightly behind the driver's seat, they saw that the headlining of the car had been altered.[1] The car had a sunroof in the middle of the roof. A panel slides back into the headlining to expose the glass of the sunroof and allow light into the car. When police searched the car, the panel was slid back. However, the void into which the panel usually retracts had been expanded because the headlining had been pulled down a few inches. The officer noticed the butt end of a firearm partially sticking out of this void.

The firearm was a .45-caliber Springfield model 1911 with a "huge" magazine attached to it. There were "quite a few" rounds in the magazine and one in the chamber. The firearm was cocked and ready to fire.

The State charged Harris with possession of a firearm by an ineligible person under Minn. Stat. § 624.713, subd. 1(2) (2016). At trial, the parties stipulated that Harris was ineligible to possess a firearm, so the only issue the jury considered was whether Harris possessed the firearm. The State introduced forensic evidence at trial showing that the firearm contained a mixture of male and female DNA from five or more people. Approximately 75.7% of the general population could be excluded as contributors to this DNA mixture, but Harris, J.A., and K.E. could not. The State presented circumstantial evidence that Harris possessed the firearm, and the jury returned a guilty verdict. The court of appeals reversed the conviction, concluding that the circumstantial evidence was insufficient to convict Harris of the offense. *State v. Harris*, No. A15-0711, 2016 WL 1396689 (Minn. App. Apr. 11, 2016). We granted the State's petition for review.

## ANALYSIS

### I.

As an initial matter, we turn to the standard of review. The State argues that the court of appeals erred by engaging in "fine-grained factual parsing" of the evidence and that this error demonstrates that our standard of review for convictions based on circumstantial evidence is unnecessarily complicated, confusing, misleading, and difficult to apply. The State urges us to abandon this standard of review and adopt in its place a unified standard of review that applies to all evidence, circumstantial or otherwise.

---

1. "Headlining" is "material that covers the ceiling of an automobile interior." *Webster's Third New International Dictionary Unabridged* 1043 (3d ed. 2002).

▅▅▅ For approximately a century, we have applied a separate standard of review to challenges to the sufficiency of circumstantial evidence.[2] *State v. Johnson,* 173 Minn. 543, 217 N.W. 683, 684 (1928). Under that standard, we identify the circumstances proved and independently consider the reasonable inferences that can be drawn from those circumstances, when viewed as a whole. *State v. Andersen,* 784 N.W.2d 320, 329 (Minn. 2010); *see State v. Robertson,* 884 N.W.2d 864, 871-72 (Minn. 2016) (considering whether "[w]hen viewed as a whole, the circumstances proved support[ed] a rational inference that Robertson was the shooter"); *State v. Silvernail,* 831 N.W.2d 594, 599 (Minn. 2013) (explaining that "[w]e review the circumstantial evidence not as isolated facts, but as a whole"). "To sustain a conviction based on circumstantial evidence, the reasonable inferences that can be drawn from the circumstances proved as a whole must be consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of guilt." *State v. Fox,* 868 N.W.2d 206, 223 (Minn. 2015).

This circumstantial-evidence standard dates back to at least 1928, and possibly earlier. *Johnson,* 217 N.W. at 684 ("[A]ll the circumstances proved must be consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt." (citing *State v. Johnson,* 37 Minn. 493, 35 N.W. 373, 376 (1887)). It has remained our law ever since. *See State v. Cox,* 884 N.W.2d 400, 411 (Minn. 2016) ("To sustain a conviction based on circumstantial evidence, the reasonable inferences that can be drawn from the circumstances proved must be consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis other than guilt."); *State v. Taylor,* 650 N.W.2d 190, 206 (Minn. 2002) ("Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt."); *State v. Scharmer,* 501 N.W.2d 620, 622 (Minn. 1993) (reversing convictions because "[t]he evidence did not form a complete chain leading so directly to appellant's guilt as to exclude beyond a reasonable doubt any rational hypothesis except that of his guilt"); *State v. Webb,* 440 N.W.2d 426, 431 (Minn. 1989) (reversing a conviction because "[t]he circumstantial evidence was not inconsistent with rational hypotheses other than guilt").

▅▅▅ We are "extremely reluctant" to overrule our precedent absent a compelling reason to do so. *State v. Lee,* 706 N.W.2d 491, 494 (Minn. 2005).[3] The State

---

2. Harris argues that the standard of review dates back to *State v. Johnson,* 37 Minn. 493, 35 N.W. 373, 376 (1887). Although neither the parties nor the amici dispute this assertion, the dissent argues that the standard of review originated in *State v. Johnson,* 173 Minn. 543, 217 N.W. 683, 684 (1928). For our purposes, it is irrelevant whether the standard is either 89 or 130 years old—none of the State's arguments become more persuasive if the standard is "only" 89 years old. The point is that we have applied the standard of review for a very long time and we do not abandon such well-established precedent without a compel-

ling reason to do so. *State v. Lee,* 706 N.W.2d 491, 494 (Minn. 2005).

3. The dissent argues that we should be less concerned about stare decisis here because we are addressing a standard of review, rather than an issue of substantive law. "It is true that stare decisis does not apply with the same strictness in some fields of law as in others.... However, it is not inapplicable in any field." *State ex. rel. Foster v. Naftalin,* 246 Minn. 181, 74 N.W.2d 249, 267 (1956).

The dissent also argues that previously we have been willing to overrule our standards of review, citing *State v. Ramey,* 721 N.W.2d 294

offers several reasons for overruling *Johnson*, but none are compelling.

■ First, the State argues that many other jurisdictions have abandoned a separate circumstantial-evidence standard of review, opting instead for a unified standard of review that applies to all convictions. *See Easlick v. State*, 90 P.3d 556, 557 & n.1 (Okla. Crim. App. 2004) (listing states that apply a unified standard of review when examining the sufficiency of both direct and circumstantial evidence). Although previously we have considered the practice of other states in deciding whether to overrule our precedent, *see Cargill, Inc. v. Ace Am. Ins. Co.*, 784 N.W.2d 341, 352-53 (Minn. 2010) (noting that our precedent was "the minority view" among other courts), we never have held that the extent to which other jurisdictions have adopted a different approach is, by itself, a compelling reason to overrule our precedent. We are similarly unpersuaded by the State's argument here.

■ Next, the State argues that the circumstantial-evidence standard of review rests on outdated views of the differences between direct and circumstantial evidence. We have defined circumstantial evidence as "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *State v. Hokanson*, 821 N.W.2d 340, 354 n.3 (Minn. 2012) (quoting 1 Barbara E. Bergman & Nancy Hollander, *Whartons Criminal Evidence* § 1:8 (15th ed. 1997)). In contrast, direct evidence is "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Clark*, 739 N.W.2d 412, 421 n.4 (Minn. 2007) (alteration in original) (quoting *Bernhardt v. State*, 684 N.W.2d 465, 477 n.11 (Minn. 2004)). Thus, circumstantial evidence always requires an inferential step to prove a fact that is not required with direct evidence. *Silvernail*, 831 N.W.2d at 604 (Stras, J., concurring). This basic characteristic of circumstantial evidence is not outdated; it is the same today as it was when we decided *Johnson* in 1928. Our circumstantial-evidence standard of review appropriately balances our need to defer to the jury's credibility determinations and our duty to ensure that defendants not be convicted based on insufficient evidence.[4]

(Minn. 2006) and *State v. Lugo*, 887 N.W.2d 476 (Minn. 2016). Neither of these decisions supports the dissent's conclusion.

In *Ramey*, we noted that our jurisprudence had been inconsistent on which standard should apply to unobjected-to prosecutorial misconduct. 721 N.W.2d at 298. Because of this inconsistency, we needed to abrogate some of our previous decisions to provide clarity in the law. This concern is not present here.

In *Lugo*, we explained "what we meant in [*State v. Webber*, 262 N.W.2d 157, 159 (Minn. 1977)]." 887 N.W.2d at 481. We concluded that "our decision in *Webber* was not intended to, *nor did it*, announce a rule of deference to district court pretrial legal conclusions that the State has appealed." *Id.* at 485 (emphasis added). To make our decision absolutely clear, we added: "To the extent … *Webber* suggests the contrary, it is overruled." *Id.* But

because we held that *Webber* did not announce a deferential rule, there was nothing to overrule. *Lugo* therefore does not support the dissent's argument.

4. The dissent notes that some forms of circumstantial evidence, such as DNA or fingerprint evidence, can be very reliable. We agree. But our circumstantial-evidence standard of review is not premised on the view that circumstantial evidence is unreliable. Instead, it is based on the fact that unlike direct evidence, it requires an additional inference to establish guilt and therefore we have adopted a two-step process to account for the additional inference that must be made: a finding that an alleged fact (which does not by itself establish the required element) exists and then a conclusion that if the alleged fact exists, one can reasonably infer that the required element also exists. The fact that DNA or fingerprint evidence can be reliable does

■ The State also argues that we should overrule *Johnson* because, since 2010, there has been a "dramatic increase" in the number of convictions reversed on appeal because of insufficient circumstantial evidence.[5] But the State's research relies solely on the raw number of convictions reversed on appeal. It does not attempt to show the number of convictions that were appealed during the relevant periods, which would allow us to determine whether there has been an increase in the percentage of convictions reversed on appeal. Nor does the State attempt to show that a substantial number of these convictions were wrongly reversed. The State also does not explain why we would abandon a century-long standard of review simply if, as the State argues, a greater number of criminal convictions have been reversed since 2010. In short, the State's statistics do not provide a compelling reason to depart from our precedent.

Finally, the State argues that our standard of review creates confusion for appellate courts, noting that the court of appeals has said it can sometimes be difficult to identify the "circumstances proved," *State v. McCormick*, 835 N.W.2d 498, 505-06 n.2 (Minn. App. 2013), and has suggested that juries are in the best position to determine which inferences are reasonable, *State v. Seavey*, No. A13-0138, 2013 WL 5976070, at *5 (Minn. App. Nov. 12, 2013) (Smith, J., concurring specially). We believe our case law addresses these concerns.

■ Nevertheless, we take this opportunity to reaffirm what we have already stated about the circumstantial-evidence standard of review. As the fact finder, the jury is in a unique position to determine the credibility of the witnesses and weigh the evidence before it. *State v. Gatson*, 801 N.W.2d 134, 144 (Minn. 2011). It "is free to accept part and reject part of a witness's testimony." *State v. Landa*, 642 N.W.2d 720, 725 (Minn. 2002). To be clear, the first step of our circumstantial-evidence test protects these principles—it requires an appellate court to winnow down the evidence presented at trial by resolving all questions of fact in favor of the jury's verdict, resulting in a subset of facts that constitute "the circumstances proved." *See State v. Hawes*, 801 N.W.2d 659, 670 (Minn. 2011) (disregarding evidence inconsistent with the verdict).

■ Having preserved the jury's credibility findings, the appellate court considers at the next step whether a reasonable inference of guilt can be drawn from the circumstances proved, viewed as a whole, and whether a reasonable inference inconsistent with guilt can be drawn from the circumstances proved, again viewed as a whole. *State v. Al-Naseer*, 788 N.W.2d 469, 474-75, 478-79 (Minn. 2010). This second step does not encroach on the jury's credibility determinations because the act of inferring involves the drawing of permissible deductions, not actual fact finding by

not alter the basic characteristic of circumstantial evidence, which is the same today as it was when we decided *Johnson* in 1928.

**5.** The State attributes this "dramatic" change since 2010 to our decision in *State v. Andersen*, 784 N.W.2d 320 (Minn. 2010). However, *Andersen* simply applied the standard of review that we articulated in *State v. Stein*, 776 N.W.2d 709 (Minn. 2010) (plurality opinion) and *State v. Tscheu*, 758 N.W.2d 849 (Minn.

2008). As noted in those cases, we did not change the standard of review, but rather merely applied the existing standard. *See Stein*, 776 N.W.2d at 715 (reaffirming the standard of review applied in *State v. Johnson*, 173 Minn. 543, 217 N.W. 683 (1928)); *Tscheu*, 758 N.W.2d at 858 n.9 ("We apply here the standard we have applied for decades....").

the jury. *See State v. Jones*, 266 Minn. 526, 124 N.W.2d 729, 731 (1963). The second part of the second step—determining whether a reasonable inference inconsistent with guilt can be drawn—also ensures that there is no reasonable doubt as to the defendant's guilt. For the foregoing reasons, we cannot agree that an appellate court invades the fact-finding function of the jury when it applies the circumstantial-evidence standard of review.

In sum, the State has not established a compelling reason for us to overrule an approximately century-old rule governing the review of convictions based on circumstantial evidence. We therefore decline the State's invitation to abandon the circumstantial-evidence standard.

## II.

■■■■ Having resolved the standard-of-review question, we next address whether, under the circumstantial-evidence standard, the evidence in this case is sufficient to support a guilty verdict. Our "first task is to identify the circumstances proved." *Andersen*, 784 N.W.2d at 329 (citation omitted). In determining the circumstances proved, we disregard evidence that is inconsistent with the jury's verdict. *Hawes*, 801 N.W.2d at 669-70. The second step is to independently consider the reasonable inferences that can be drawn from the circumstances proved, when viewed as a whole. *Robertson*, 884 N.W.2d at 871 (considering whether "[w]hen viewed as a whole, the circumstances proved support[ed] a rational inference that Robertson was the shooter"). We give no deference to the jury's choice between reasonable inferences at this second step. *Fox*, 868 N.W.2d at 223. To sustain the conviction, the circumstances proved, when viewed as a whole, must be consistent with a reasonable inference that the accused is guilty and inconsistent with any rational hypothesis except that of guilt. *Id.*

■■■■ To convict Harris of possession of a firearm by an ineligible person, the State was required to prove in relevant part that he knowingly possessed the firearm. *State v. Salyers*, 858 N.W.2d 156, 161 (Minn. 2015). A defendant may possess an item jointly with another person. *State v. Lee*, 683 N.W.2d 309, 317 n.7 (Minn. 2004); *State v. Lorenz*, 368 N.W.2d 284, 285-86 (Minn. 1985) (concluding that the evidence was sufficient to infer that the defendant jointly possessed the marijuana found in the defendant's bedroom with the owner of the house). Possession may be proved through evidence of actual or constructive possession. *Salyers*, 858 N.W.2d at 159. There are two methods by which the State may prove constructive possession. *Id.* The State may show that the police found the item in a place under the defendant's exclusive control to which other people normally did not have access. *State v. Florine*, 303 Minn. 103, 226 N.W.2d 609, 611 (1975). Alternatively, if police found the item in a place to which others had access, the State must show that there is a strong probability (inferable from other evidence) that at the time the defendant was consciously or knowingly exercising dominion and control over it. *Id.*

■■■■ To establish that a defendant was consciously or knowingly exercising dominion and control over a firearm at the time in question, the State must prove more than the defendant's mere proximity to the firearm. *See Florine*, 226 N.W.2d at 611 ("Because defendant did not have exclusive possession of the automobile, one could not automatically infer from the mere fact that cocaine was found in the automobile that the cocaine belonged to defendant."); *see also Lee*, 683 N.W.2d at 316 (explaining evidence that showed defendant "exercis[ed] dominion and control

over the area in which the firearms and marijuana were found"). In addition, a defendant's ease of access to a firearm is but "one factor relevant to establishing constructive possession, . . . not the sole factor or necessarily even the most important factor." *Salyers*, 858 N.W.2d at 159. In sum, the State must prove that the defendant had an ability and intent to exercise dominion and control over the firearm. *See, e.g., State v. Onyelobi*, 879 N.W.2d 334, 343-44 (Minn. 2016) (concluding that facts were "sufficient to give rise to an honest and strong belief" that the defendant possessed the narcotics, jointly or singly, "that police saw in her hotel room").

■■■■ Here, the State's theory at trial was that Harris constructively possessed the firearm found in the car, individually or jointly, with his two passengers. Consequently, the issue is whether the circumstances proved, viewed as a whole, are consistent with a reasonable inference that Harris knowingly exercised dominion and control over the firearm and inconsistent with a rational hypothesis that he did not knowingly exercise dominion and control over the firearm.

■■■■ The circumstances proved that implicate Harris include: (1) on the night of March 4, 2014, Harris was driving a car, J.A. was sitting in the front passenger seat, and K.E. was sitting in the rear seat; (2) there was an active warrant for J.A.'s arrest; (3) after securing backup assistance, the police officer assigned to execute the arrest warrant activated the lights and siren on his vehicle; (4) Harris continued driving between 30 and 35 miles per hour for about three blocks after the officer activated his lights and siren; (5) the officer saw movement in the car; (6) when the police officer searched the car, he noticed that the headlining had been pulled down near the sunroof, to the right and slightly behind the driver's seat, creating a small void; (7) the officer saw an object, which he clearly recognized as the butt end of a silver handgun, wedged in this void between the headlining and roof of the car; (8) a mixture of male and female DNA from five or more people was recovered from the firearm; and (9) subsequent DNA testing concluded that none of the occupants of the vehicle could be excluded as contributors to the DNA mixture found on the firearm, but 75.7% of the general population could be.[6]

The State contends that, when viewed as a whole, the circumstances proved are inconsistent with any rational hypothesis except that of guilt.[7] We disagree. When viewed as a whole, the circumstances proved do not preclude a reasonable inference that Harris did not know the firearm was in the car.[8] Harris did not own the car

---

6. The State observes that the court of appeals erroneously described the sunroof as "toward the back of the vehicle." Based on this error, the State contends that the first step of the circumstantial-evidence test allows a "subjective delineation" of the circumstances proved. We disagree. An appellate court must accurately describe the relevant facts in analyzing any issue, including during the first step of the circumstantial-evidence test.

7. In the court of appeals, Harris conceded that "[a] reasonable inference to be drawn from the circumstances proved was that [he] knowingly possessed the gun before it was hidden in the liner." He now attempts to back away from that concession, admitting only that the circumstances proved support "a reasonable inference that at least one of the car's occupants may have possessed the gun." Because we conclude that, when viewed as a whole, there are rational hypotheses other than guilt consistent with the circumstances proved, we need not address the impact, if any, of Harris's attempt to reframe his earlier concession.

8. The parties do not discuss Minn. Stat. § 609.672 (2016), which provides that "[t]he presence of a firearm in a passenger automo-

and the officer who searched the car did not immediately see the firearm. It was not until the officer looked up, to the right of, and slightly behind the driver's seat that he saw an object wedged between the headliner and the roof of the car. Although the officer "clearly" recognized the object as the butt of a silver handgun, there is no evidence that a lay person readily would have recognized the object as the butt of a firearm, especially in the dark of night. In addition, although the officer saw movement in the car, there was no testimony that this movement was suspicious or that Harris or either of his passengers ever reached toward the sunroof. Finally, neither the DNA test results nor Harris's failure to immediately stop the car preclude a reasonable inference that Harris did not know the firearm was in the car. As the State's expert conceded, approximately 25% of the general population could not be excluded as a source of the DNA found on the firearm. Moreover, it is reasonable to infer that Harris failed to immediately stop the car because he knew there was an outstanding warrant for J.A.'s arrest.

■ Because the circumstances proved, when viewed as a whole, are consistent with a reasonable inference that Harris did not know the firearm was in the car, we agree with the court of appeals that the State presented insufficient evidence to support Harris's conviction of possession of a firearm by an ineligible person.[9]

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

## DISSENT

LILLEHAUG, J. (dissenting).

Every week in at least one of Minnesota's 87 counties, a district court instructs a jury that a fact may be proven by direct evidence, or by circumstantial evidence, or by both. The district court admonishes the jury that the law does not prefer one form of evidence over the other.

But, on appellate review, we do not follow that admonition. Our standards of re-

---

bile permits the fact finder to infer knowing possession of the firearm by the driver," subject to exceptions that are not relevant here. The court of appeals concluded that section 609.672 "does not negate other reasonable inferences, and therefore does not affect the sufficiency-of-the-circumstantial-evidence analysis." *Harris*, 2016 WL 1396689, at *4 n.1 (citation and internal quotation marks omitted). We have never discussed section 609.672, and because the parties do not discuss this provision, we do not decide whether the court of appeals correctly applied it here.

9.  The State argues that the court of appeals' decision "totally eviscerates the legal concept of joint-constructive possession." We recognize that courts must be cautious in addressing the sufficiency of evidence in a joint constructive possession case. Constructive possession is a legal concept that permits an inference that the defendant pos-

sessed an item found in a place in which others had access when "there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it." *Florine*, 226 N.W.2d at 611. In addition, two or more people can constructively possess an item jointly. *Lee*, 683 N.W.2d at 316 n.7. In a joint constructive possession case, the circumstances proved need not support a reasonable inference that the defendant actually possessed the item. Instead, the circumstances proved must support a reasonable inference that the defendant, singly or jointly, was at the time consciously exercising dominion and control over the item. The circumstances proved also would have to be inconsistent with a reasonable inference that the defendant, singly or jointly, was not consciously exercising dominion and control over the item at the time in question.

view prefer direct evidence. When we review convictions, we apply one standard for convictions based on direct evidence, and we apply another standard for convictions based on circumstantial evidence. And we have avoided announcing a definitive standard for review of convictions based on both kinds of evidence.

This confusing dichotomy between how we expect juries to decide cases and how we review their decisions has existed for almost 90 years. Nine decades of confusion is long enough. Evidence is evidence. Minnesota should join the appellate courts of the United States, 41 other states, and the District of Columbia in adopting a unified standard of review. I respectfully dissent.

## I.

Before discussing the antiquated notion that circumstantial evidence is inherently different and less reliable than direct evidence, let me discuss the doctrine on which the majority grounds its decision: stare decisis. What weight should we give to our prior decisions?

The answer, according to both our court and the United States Supreme Court, is that it depends on the subject matter. Stare decisis is at its "acme in cases involving property and contract rights, where reliance interests are involved ...; the opposite is true in cases ... involving procedural and evidentiary rules."[1] As we said in *Johnson v. Chicago, Burlington & Quincy Railroad Co.*,[2] "[w]here no rights have vested in reliance upon former deci-

sions, the rule [of stare decisis] is not so strictly followed."

In this case, we do not address a matter of substantive law; we address a standard of review. A standard of review is an internal appellate method of analysis. Unlike when we interpret and apply statutes, separation of powers considerations are not present. Our standards of review are not even official rules of the judicial branch, which are promulgated (usually with public notice and comment) pursuant to our rule-making authority. That is why, as one scholar puts it, "stare decisis is less relevant when deciding standards of review than in perhaps any other area of law."[3]

In practice, we have been open to changing standards of review based on logic and experience. One example is how we review a conviction when there has been unobjected-to prosecutorial misconduct. In *State v. Brown*[4] and *State v. Caron*,[5] we reviewed convictions for prosecutorial misconduct. Our standard of review did not require any consideration of whether the defendant actually objected to the misconduct. It turned out that such a standard of review was a disincentive for a defendant to make trial objections. So, in *State v. Ramey*,[6] we abrogated *Brown* and *Caron* in favor of the plain-error standard of review.

*Ramey* recognized that our plain-error standard of review had been "clarified" in *State v. Griller*.[7] *Griller* adopted the now-familiar three-prong standard announced the year before in *Johnson v. United*

---

1. *Payne v. Tennessee*, 501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

2. 243 Minn. 58, 66 N.W.2d 763, 770 (1954).

3. J. Jonas Anderson, *Specialized Standards of Review*, 18 Stan. Tech. L. Rev. 151, 177 (2015).

4. 348 N.W.2d 743 (Minn. 1984).

5. 300 Minn. 123, 218 N.W.2d 197 (1974).

6. 721 N.W.2d 294 (Minn. 2006).

7. *Id.* at 298 (citing *State v. Griller*, 583 N.W.2d 736 (Minn. 1998)).

*States*.[8] In other words, our standards of review are hardly rigid rules of law, but instead evolve and, hopefully, improve over time.[9]

Whether our precedents are substantive or procedural, we have made clear that "stare decisis does not bind us to unsound principles."[10] We have found compelling reasons to overturn other precedent when the grounds for adopting the rule in question no longer exist or other courts have already overturned similar precedent.[11] Here, our standard of review should not remain tethered to an unsound distinction between direct and circumstantial evidence.

## II.

In our district courts, juries and judges are not supposed to prefer direct evidence to circumstantial evidence, or vice versa.[12] But on appellate review, we do exactly that.[13]

For a conviction based on direct evidence, we apply the traditional standard whereby we assume that "the jury believed the State's witnesses and disbelieved any evidence to the contrary."[14] We will not "disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense."[15]

But for a conviction based on circumstantial evidence, we apply a different standard. We first identify the "circumstances" proved by the State, accepting the State's evidence and rejecting any evidence to the contrary.[16] Then we "independently examine the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt."[17] If the inferences proved are inconsistent with any rational hypothesis other than guilt, then the evidence is sufficient.[18]

The different standards of review seem to have their roots in an 1887 case that was not about the standard of review, but about a jury instruction. *State v. John-*

---

8. *Griller*, 583 N.W.2d at 740 (citing *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).

9. Just last year, in *State v. Lugo*, we clarified our standard of review of a district court's legal conclusions in pretrial appeals. 887 N.W.2d 476, 485 (Minn. 2016). In so doing, we said that any contrary language in *State v. Webber*, 262 N.W.2d 157 (Minn. 1977), was "overruled." *Id.*

10. *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 406 (Minn. 2000).

11. *See Cargill, Inc. v. Ace Am. Ins. Co.*, 784 N.W.2d 341, 352-53 (Minn. 2010); *Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597, 601 (1975); *Johnson*, 66 N.W.2d at 771.

12. *See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 3.05 (6th ed. 2015) [hereinafter CRIMJIG 3.05] ("A fact may be proven by either direct or circumstantial evidence, or by both. The law does not prefer one form of evidence over the other.").

13. *See Bernhardt v. State*, 684 N.W.2d 465, 477 (Minn. 2004) ("Circumstantial evidence is entitled to the same weight as direct evidence; however, if a conviction is based on circumstantial evidence, a higher level of scrutiny is warranted.").

14. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012).

15. *Id.*

16. *State v. Anderson*, 789 N.W.2d 227, 241-42 (Minn. 2010).

17. *Id.* at 242 (citation and internal quotation marks omitted).

18. *Id.*

son[19] was a murder case in which the State's evidence of murder was both direct and circumstantial. We said: "The [district] court charged correctly that, to authorize a conviction, the circumstances should not only be consistent with the prisoner's guilt, but they must be inconsistent with any other rational conclusion."[20] That form of jury instruction is no longer required in Minnesota,[21] is not in the Jury Instruction Guide,[22] and has been criticized by the Supreme Court as "confusing and incorrect."[23]

This form of jury instruction was turned into a standard of review in another case called *State v. Johnson*.[24] In *Johnson* (1928), the evidence showing that the defendant was the person who committed larceny was purely circumstantial.[25] In determining whether the evidence was insufficient to sustain the conviction, we cited *Johnson* (1887) for the rule that "all the circumstances proved must be consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt."[26] We then applied that rule as a *standard of review* to determine that the evidence was sufficient to sustain the conviction.[27] In other words, we adopted the *Johnson* (1887) *jury instruction* on circumstantial

evidence as an appellate *standard of review* for circumstantial evidence.[28] Given that the jury instruction from *Johnson* (1887) is now long obsolete,[29] we should consider whether the standard of review derived from that instruction may also be obsolete.

Regardless of its exact origin in Minnesota law, the idea that we must have separate standards of review depending on the type of evidence involved is unsound, for three reasons. First, as a matter of logic, the distinction between direct and circumstantial evidence is arbitrary. Second, the notion that direct evidence is necessarily more reliable than circumstantial evidence is outdated. Third, the differing standards of review are confusing and difficult to apply. These three reasons are why the federal courts and most other states have adopted a unified standard of review.

### A.

The notion that direct evidence can be easily and logically differentiated from circumstantial evidence is wrong. Traditionally, circumstantial evidence is thought to be that which requires an inference.[30] But

19. 37 Minn. 493, 35 N.W. 373 (1887) [hereinafter *Johnson* (1887)].

20. *Id.* at 376.

21. *State v. Turnipseed*, 297 N.W.2d 308, 313 (Minn. 1980).

22. *See* CRIMJIG 3.05.

23. *Holland v. United States*, 348 U.S. 121, 139-40, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

24. 173 Minn. 543, 217 N.W. 683 (1928) [hereinafter *Johnson* (1928)].

25. *Id.* at 683.

26. *Id.* at 684 (citing *Johnson* (1887)).

27. *Id.*

28. The adoption of this standard of review was peculiar because earlier in the same year, 1928, we had declined to reverse a conviction based on the following common-sense jury instruction: "Circumstantial evidence is not necessarily inferior to direct evidence. On the contrary, circumstantial evidence may be the highest and most conclusive kind of proof." *State v. Hentschel*, 173 Minn. 368, 217 N.W. 378, 379 (1928).

29. *Turnipseed*, 297 N.W.2d at 313.

30. *Evidence*, Black's Law Dictionary (10th ed. 2014) (defining "circumstantial evidence" as "[e]vidence based on inference").

such a definition is unhelpful, as every piece of evidence requires some sort of inference to be probative.[31] Legal commentators agree.[32] Courts have recognized that pigeonholing evidence as direct or circumstantial is an arbitrary exercise. The U.S. Supreme Court came to this conclusion more than 60 years ago.[33] As Judge Learned Hand recognized, the distinctions between direct and circumstantial evidence are facile.[34] Minnesota should not continue with standards of review based on an arbitrary and facile distinction.

## B.

Second, not only is the distinction between direct evidence and circumstantial evidence faulty as a matter of logic, it rests on an antiquated notion that direct evidence is more reliable than circumstantial evidence. Unlike fine wine, this notion gets worse over time.

As numerous courts have recognized, circumstantial evidence is not as weak as previously thought.[35] Circumstantial evidence based on sound science is reliable: DNA and fingerprint evidence are the

31. *See State v. Silvernail*, 831 N.W.2d 594, 605 n.2 (Minn. 2013) (Stras, J., concurring) ("D.M.'s testimony [that the defendant, Silvernail, confessed to killing the victim, Roberts] arguably constitutes direct evidence that Silvernail made the statement to D.M. but only circumstantial evidence that Silvernail killed Roberts."); *see also id.* (noting a previous employment discrimination case in which we stated that "testimony from another individual ... of statements made by the decisionmaker" is "direct evidence of the fact that the decisionmaker made the alleged statement ... [but] merely circumstantial evidence of the fact that the employer illegally discriminated against [an employee]") (alterations in original) (quoting *Wright v. Southland Corp.*, 187 F.3d 1287, 1295 n.9 (11th Cir. 1999))).

32. *See, e.g.*, Richard K. Greenstein, *Determining Facts: The Myth of Direct Evidence*, 45 Hous. L. Rev. 1801, 1804 (2009) ("There simply is no category of evidence that brings us into direct contact with crucial facts because no such contact is possible. All facts are a function of interpretation, and this unavoidability of interpretation makes all facts a matter of inference and all evidence, whether called 'direct' or 'circumstantial,' nothing more or less than a contribution to that inferential process."); Note, *Sufficiency of Circumstantial Evidence in a Criminal Case*, 55 Colum. L. Rev. 549, 556-57 (1955) (stating that direct evidence requires a jury to make inferences "which will be based not only on its opinion of the witness' credibility, but on the circumstances to which the witness testifies," and concluding that "the lines of direct and circumstantial proof may be equally attenuated").

33. *See Holland*, 348 U.S. at 140, 75 S.Ct. 127 ("Circumstantial evidence ... is intrinsically no different from testimonial evidence."); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) ("The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.' " (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 508 n.17, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) (citing *The Robert Edwards*, 19 U.S. 6 Wheat. 187, 190, 5 L.Ed. 238 (1821))))).

34. *United States v. Becker*, 62 F.2d 1007, 1010 (2d Cir. 1933) ("All conclusions have implicit major premises drawn from common knowledge; the truth of testimony depends as much upon these, as do inferences from events.").

35. *See, e.g.*, *State v. Grim*, 854 S.W.2d 403, 405-08 (Mo. 1993) (abandoning a heightened standard of review for circumstantial evidence because it was founded on "a basic distrust of criminal convictions based upon circumstantial evidence and nothing more"); *Easlick v. State*, 90 P.3d 556, 559 (Okla. Crim. App. 2004) (abandoning its special standard of review for circumstantial evidence because that standard was "based on antiquated ideas concerning the value of circumstantial evidence"); *State v. Derouchie*, 140 Vt. 437, 440 A.2d 146, 149 (1981) ("[T]he ... test is premised upon a now suspect distrust of circumstantial evidence.").

most obvious examples.[36] By contrast, some kinds of direct evidence are nowhere near as strong as we used to think. For example, case law and legal commentary are replete with critique on the reliability of eyewitness testimony.[37]

Confessions are a classic example of direct evidence. Yet we know that they are not always reliable. As we recognized in *State v. Scales*,[38] some may be the product of "unfair and psychologically coercive police tactics." That is why we require that interrogations by law enforcement be recorded.[39]

Another form of confession, admissions to fellow inmates, may be less than reliable. Because they are eager to strike a deal, and have a natural incentive to concoct a narrative, "jailhouse informants are considered among the least reliable witnesses in the criminal justice system." [40] Yet often jailhouse informant testimony is considered to be direct evidence, and in reviewing a conviction we must assume that the jury believed it.

Indeed, there is "empirical data strongly indicating that at least some types of circumstantial evidence are actually more reliable than familiar categories of direct evidence." [41] For example, policing prac-

---

36. *See, e.g.*, David Enoch & Talia Fisher, *Sense and "Sensitivity": Epistemic and Instrumental Approaches to Statistical Evidence*, 67 Stan. L. Rev. 557, 587-88 (2015) (discussing how DNA has "emerged as the most important forensic scientific breakthrough of the twentieth century" and is viewed "as bringing an unprecedented degree of certitude to the courtroom"); Kenworthey Bilz, *Self-Incrimination Doctrine Is Dead; Long Live Self-Incrimination Doctrine: Confessions, Scientific Evidence, and the Anxieties of the Liberal State*, 30 Cardozo L. Rev. 807, 813-15 (2008) (discussing how forensic fingerprinting, and now DNA analysis, has been increasingly identified as a reliable form of evidence).

37. *Perry v. New Hampshire*, 565 U.S. 228, 245, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012) (discussing "eyewitness testimony of questionable reliability"); *United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) ("The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification."); *State v. Ferguson*, 804 N.W.2d 586, 604-10 (Minn. 2011) (Anderson, Paul J., concurring) (discussing the "unreliability of eyewitness identification"); *State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn. 1980) (discussing "convictions of the innocent based on unreliable eyewitness identification"); *Dean Cage, Wrongfully Convicted Based on Eyewitness ID Practices that Are Still in Place Today, Is Exonerated in Chicago with DNA*, Innocence Project (May 28, 2008), http://tinyurl.com/DeanCage (discussing "[e]yewitness misidentification, which was a factor in more

than 75% of all wrongful convictions overturned by DNA testing nationwide").

38. 518 N.W.2d 587, 591 (Minn. 1994).

39. *Id.* at 592.

40. Brandon L. Garrett, *Judging Innocence*, 108 Colum. L. Rev. 55, 86 (2008) (quoting Steve Mills & Ken Armstrong, *Another Death Row Inmate Cleared*, Chi. Trib., Jan. 19, 2000, at N1, and citing James S. Liebman, *The Overproduction of Death*, 100 Colum. L. Rev. 2030, 2088-89 n.149 (2000) for "additional examples of jailhouse informants giving false testimony").

A Minnesota attorney, Edward Cassidy, was recently successful in freeing an innocent man who had been wrongfully convicted in a 2002 death penalty case based on the testimony of two jailhouse informants. *See Wearry v. Cain*, —— U.S. ——, 136 S.Ct. 1002, 1002-03, 1008, 194 L.Ed.2d 78 (2016). The State "presented no physical evidence at trial," instead relying on the informants' "dubious" and "suspect testimony." *Id.* at ——, 136 S.Ct. at 1003, 1006.

The United States Supreme Court reversed the state postconviction court's denial of Wearry's petition for postconviction relief. *Id.* at ——, 136 S.Ct. at 1008. The Court characterized the State's trial evidence as "a house of cards, built on the jury crediting [the jailhouse informant's] account." *Id.* at ——, 136 S.Ct. at 1006.

41. Greenstein, *supra* note 32, at 1803 (citing Kevin Jon Heller, *The Cognitive Psychology of*

tices are shifting to prefer DNA evidence over eyewitness testimony.[42]

Our standard of review should not be governed by "classes" of evidence. Even so, circumstantial evidence as a class is at least as reliable as direct evidence as a class.[43] It is time for our standard of review to take that into account.

## C.

Finally, the different standards of review are confusing and difficult to apply, in at least two respects.

First, for convictions based on circumstantial evidence, it is a confusing task to determine precisely the "circumstances proved." What, precisely, is a "circumstance"? Is it a fact, an inference, or both? Further, juries deliver verdicts of "guilty" or "not guilty"; they do not tell us exactly which facts they found and which inferences they drew. And precisely how does one decide which hypotheses are "rational" and which are not? I have a very hard time applying the circumstantial evidence standard of review.[44] We are trying to do what,

*Circumstantial Evidence*, 105 Mich. L. Rev. 241, 252-55 (2006) ("[R]esearch into error rates and false-conviction statistics both indicate that circumstantial evidence is actually far more reliable.")); *see also* Bilz, *supra* note 36, at 811 (stating that the "underpinnings" for confessions and eyewitness identifications "are indeed crumbling, and that the result has been reduced dependence on traditional evidence in favor of increasingly reliable ... scientific evidence"); Irene Merker Rosenberg & Yale L. Rosenberg, *"Perhaps What Ye Say Is Based Only on Conjecture"—Circumstantial Evidence, Then and Now*, 31 Hous. L. Rev. 1371, 1390-92 (1995) (acknowledging that courts "distrust[ed] circumstantial evidence" but stating that they now "consider[ ] it superior on the theory that whereas witnesses may lie, circumstances do not"); 1A John Henry Wigmore, *Evidence in Trials at Common Law* 957, 961 (Peter Tillers rev. ed., 1983) ("[I]t is out of the question to make a general assertion ascribing greater weight to one class or the other.... Wigmore's view that circumstantial evidence may be as persuasive and as compelling as testimonial evidence, and sometimes more so, is now generally accepted.").

**42.** *See* Andrea Roth, *Safety in Numbers? Deciding When DNA Alone Is Enough to Convict*, 85 N.Y.U. L. Rev. 1130, 1145 (2010) (discussing the "trend in law enforcement toward reliance on DNA rather than other lesser forms of direct but unreliable evidence such as eyewitness identification" (citing Carole McCartney, *Forensic Identification & Criminal Justice* 32 (2006))).

**43.** *See State v. Farnum*, 275 Conn. 26, 878 A.2d 1095, 1100 (2005) ("[I]t does not dimin-

ish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct...." (citation and internal quotation marks omitted)); *State v. Schrier*, 300 N.W.2d 305, 308 (Iowa 1981) ("Direct and circumstantial evidence are equally probative."); *People v. Wolfe*, 440 Mich. 508, 489 N.W.2d 748, 756 (1992) ("[C]ircumstantial evidence is oftentimes stronger and more satisfactory than direct evidence." (quoting *State v. Poellinger*, 153 Wis.2d 493, 451 N.W.2d 752, 755 (1990))); *State v. Mayberry*, 52 N.J. 413, 245 A.2d 481, 493 (1968) ("[I]n many situations circumstantial evidence may be 'more forceful and more persuasive than direct evidence.'" (quoting *State v. Corby*, 28 N.J. 106, 145 A.2d 289, 296 (1958))); *Hankins v. State*, 646 S.W.2d 191, 198 (Tex. Crim. App. 1981) ("State courts in general have recognized that circumstantial evidence may have equal if not greater weight than direct evidence."); *Derouchie*, 440 A.2d at 149 ("Yet, there are cases, such as the instant appeal, where circumstantial evidence is highly reliable. At times, direct evidence may be utterly insufficient."); *State v. Delmarter*, 94 Wash.2d 634, 618 P.2d 99, 101 (1980) ("[C]ircumstantial evidence is not to be considered any less reliable than direct evidence.").

**44.** *See State v. Seavey*, No. A13-0138, 2013 WL 5976070, at *4 (Minn. App. Nov. 12, 2013) (Smith, J., concurring) ("I write separately to address the burgeoning confusion over the standard for reviewing circumstantial evidence cases.... [W]e cannot identify the exact set of 'circumstances proved' on appeal.").

for a jury, the Supreme Court said in *Holland*, would be "confusing and incorrect."[45]

Second, what are we supposed to do when the State's proof of an element of a crime consists of both direct evidence and circumstantial evidence? What is the standard of review in such a case—is it some kind of hybrid of the two standards? The court of appeals does not know.[46] Neither do we. As Justice Stras painstakingly explained in his concurrence in *State v. Silvernail*,[47] we have had "conflicting articula-

tions" of the standard when the evidence is mixed.[48] And we have not said anything clearer since *Silvernail* was decided.

## D.

For these reasons, most appellate courts have adopted a single standard of review, not tethered to whether convictions and elements are supported by evidence that is direct, circumstantial, or both. The federal test is unitary.[49] Most states, too, have unitary standards.[50]

**45.** 348 U.S. at 139-40, 75 S.Ct. 127.

**46.** *See State v. Ketz*, No. A14-1163, 2015 WL 4877568, at *7 n.2 (Minn. App. Aug. 17, 2015), *rev. denied* (Nov. 17, 2015) ("It is unclear which standard of review we should apply when we are reviewing the sufficiency of the evidence that includes both direct and circumstantial evidence."); *State v. Buckney*, No. A11-1417, 2012 WL 3023391, at *2 n.1, *3 (Minn. App. July 23, 2012) (applying the standard of review for circumstantial evidence to a confession, i.e., direct evidence).

**47.** 831 N.W.2d 594 (Minn. 2013).

**48.** *Id.* at 602 (Stras, J., concurring).

**49.** *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").

**50.** Alaska: *Des Jardins v. State*, 551 P.2d 181 (Alaska 1976); *State v. McDonald*, 872 P.2d 627 (Alaska Ct. App. 1994).
 Arizona: *State v. Nash*, 143 Ariz. 392, 694 P.2d 222 (1985).
 California: *People v. Miller*, 50 Cal.3d 954, 269 Cal.Rptr. 492, 790 P.2d 1289 (1990).
 Colorado: *Martinez v. People*, 344 P.3d 862 (Colo. 2015).
 Connecticut: *State v. Farnum*, 275 Conn. 26, 878 A.2d 1095 (2005).
 Delaware: *Hoey v. State*, 689 A.2d 1177 (Del. 1997).
 District of Columbia: *Jones v. United States*, 477 A.2d 231 (D.C. 1984).

Hawai'i: *State v. Bright*, 64 Haw. 226, 638 P.2d 330 (1981).
 Idaho: *State v. Ponthier*, 92 Idaho 704, 449 P.2d 364 (1969).
 Illinois: *People v. Pollock*, 202 Ill.2d 189, 269 Ill.Dec. 197, 780 N.E.2d 669 (2002).
 Indiana: *Craig v. State*, 730 N.E.2d 1262 (Ind. 2000).
 Iowa: *State v. Radeke*, 444 N.W.2d 476 (Iowa 1989).
 Kansas: *State v. Morton*, 230 Kan. 525, 638 P.2d 928 (1982).
 Kentucky: *Bussell v. Commonwealth*, 882 S.W.2d 111 (Ky. 1994).
 Maine: *State v. Anderson*, 434 A.2d 6 (Me. 1981).
 Maryland: *Beattie v. State*, 216 Md.App. 667, 88 A.3d 906 (Md. Ct. Spec. App. 2014).
 Massachusetts: *Commonwealth v. Roman*, 427 Mass. 1006, 694 N.E.2d 860 (1998).
 Michigan: *People v. Hardiman*, 466 Mich. 417, 646 N.W.2d 158 (2002).
 Missouri: *State v. Grim*, 854 S.W.2d 403 (Mo. 1993).
 Montana: *State v. Rosling*, 342 Mont. 1, 180 P.3d 1102 (2008).
 Nebraska: *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995).
 Nevada: *Koza v. State*, 100 Nev. 245, 681 P.2d 44 (1984).
 New Hampshire: *State v. Sanborn*, 168 N.H. 400, 130 A.3d 563 (2015).
 New Jersey: *State v. Mayberry*, 52 N.J. 413, 245 A.2d 481 (1968).
 New Mexico: *State v. Bankert*, 117 N.M. 614, 875 P.2d 370 (1994).
 New York: *People v. Williams*, 84 N.Y.2d 925, 620 N.Y.S.2d 811, 644 N.E.2d 1367 (1994).
 North Carolina: *State v. Haselden*, 357 N.C. 1, 577 S.E.2d 594 (2003).

## III.

Applying a unitary standard,[51] I would reverse the court of appeals and affirm Harris's conviction.

"Once a defendant has been found guilty of the crime charged, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution."[52] And when faced with a conviction based on a record "that supports conflicting inferences," an appellate court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."[53] Against this backdrop, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[54]

The evidence presented to the jury was as follows. Harris was driving the vehicle containing the firearm. He continued to drive after a police officer activated the squad car lights and siren, and the officer had to force the vehicle to the curb. When police officers ordered Harris to show his hands, he failed to fully comply. The firearm was visible and accessible to Harris, as the butt of the firearm was sticking out of the headliner and poking into the cabin of the vehicle. And Harris's DNA could not be excluded from the mixture found on the firearm, even though approximately 75.7% of the general population could be excluded.

Based on that evidence and the trial court's instructions, the jury unanimously concluded beyond a reasonable doubt that Harris had possessed the firearm. After viewing the evidence in the light most favorable to the prosecution, I cannot say that the evidence was insufficient to permit the jurors to reach their verdict.

Accordingly, I would reverse the court of appeals and affirm Harris's conviction for possession of a firearm by an ineligible person.

North Dakota: *State v. Treis,* 597 N.W.2d 664 (N.D. 1999).

Ohio: *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

Oklahoma: *Easlick v. State,* 90 P.3d 556 (Okla. Crim. App. 2004).

Oregon: *State v. Hall,* 327 Or. 568, 966 P.2d 208 (1998).

Pennsylvania: *Commonwealth v. Robertson-Dewar,* 829 A.2d 1207 (Pa. Super. Ct. 2003); *Commonwealth v. Newsome,* 787 A.2d 1045 (Pa. Super. Ct. 2001).

Rhode Island: *State v. Kaba,* 798 A.2d 383 (R.I. 2002).

South Dakota: *State v. Miller,* 851 N.W.2d 703 (S.D. 2014).

Tennessee: *State v. Sisk,* 343 S.W.3d 60 (Tenn. 2011).

Texas: *King v. State,* 895 S.W.2d 701 (Tex. Crim. App. 1995).

Utah: *State v. Nielsen,* 326 P.3d 645 (Utah 2014).

Vermont: *State v. Couture,* 169 Vt. 222, 734 A.2d 524 (1999).

Washington: *State v. Delmarter,* 94 Wash.2d 634, 618 P.2d 99 (1980).

West Virginia: *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

Wisconsin: *State v. Smith,* 342 Wis.2d 710, 817 N.W.2d 410 (2012).

Wyoming: *Anderson v. State,* 216 P.3d 1143 (Wyo. 2009).

**51.** Whether the federal unitary standard is sufficient to protect against unjust convictions was not briefed or argued in this case. For purposes of this dissent, I apply the standard of review enunciated in *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, which most state supreme courts apply.

**52.** *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

**53.** *Id.* at 326, 99 S.Ct. 2781.

**54.** *Id.* at 319, 99 S.Ct. 2781.

MCKEIG, Justice (dissenting).

I join in the dissent of Justice Lillehaug.