*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0313

State of Minnesota,
Respondent,

vs.

Steven Craig Morrow,
Appellant.

**Filed March 4, 2024**
**Affirmed**
**Klaphake, Judge[*]**

Itasca County District Court
File No. 31-CR-20-2780

Keith Ellison, Attorney General, Peter Magnuson, Assistant Attorney General, St. Paul, Minnesota; and

Matti R. Adam, Itasca County Attorney, Grand Rapids, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael McLaughlin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Frisch, Judge; and Klaphake, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**KLAPHAKE**, Judge

In this appeal from appellant Steven Craig Morrow's conviction for receiving stolen property, Morrow challenges the sufficiency of the evidence underlying his conviction. Morrow also argues that the district court abused its discretion when it ordered him to pay restitution for the stolen property. Because the evidence was sufficient to support the jury's verdict and because the district court did not abuse its discretion in ordering Morrow to pay restitution, we affirm.

## DECISION

Morrow challenges the sufficiency of the evidence supporting his conviction, arguing that the state failed to sufficiently prove that he knew or had reason to know that the property was stolen. Morrow also argues that the district court abused its discretion by awarding restitution, contending that his conviction for receiving stolen property was not a direct cause of the victim's damages. We address each argument in turn.

I. **There was sufficient evidence to prove Morrow knew the welder was stolen.**

Morrow first argues that the state failed to present sufficient evidence to support his conviction, specifically that he knew or had reason to know that he possessed stolen property. As a preliminary matter, the parties disagree as to what standard governs our sufficiency-of-the-evidence review on appeal. Morrow contends that the circumstantial-evidence standard applies because a defendant's state of mind is generally proved through circumstantial evidence. *See State v. Al-Naseer*, 788 N.W.2d 469, 473-74 (Minn. 2010). The state disagrees and argues that this is the rare case where direct evidence proved

Morrow's state of mind. Direct evidence is evidence "based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (citations and quotations omitted). Circumstantial evidence on the other hand is evidence "based on inference and not on personal knowledge or observation and all evidence that is not given by eyewitness testimony." *Bernhardt v. State*, 684 N.W.2d 465, 477 n.11 (Minn. 2004) (citation omitted).

Here, D.P., testifying pursuant to a plea agreement with the state, stated that he and Morrow went to the victim's house and stole a garbage bag full of "little tractor parts." Once there, Morrow noticed a welder on the property and believed that "it was expensive [] and that . . . he knew he could make money off of it." D.P. further testified that he and Morrow returned a second time to the victim's house with Morrow's vehicle and trailer and loaded the welder onto the trailer and drove it back to Morrow's house. D.P.'s testimony is direct evidence of the receiving-stolen-property charge: it is based on personal observation and, if true, proves that Morrow knew the welder was stolen because he took part in its theft. *See Harris*, 895 N.W.2d at 599. The state also offered the testimony of L.W., who went with Morrow to sell the welder and drop it off at the buyer's farm. After deciding not to sell the welder, L.W. and Morrow returned to the buyer's farm and picked it up. L.W. testified that "there was wind of [the welder] being stolen" and that he urged Morrow to bring the welder to the police, which Morrow declined to do. L.W.'s testimony is circumstantial evidence of Morrow's knowledge because it requires the jury to infer that Morrow, based on L.W.'s statements, knew or should have known that the welder was stolen. *See Bernhardt*, 684 N.W.2d at 477 n.11. The state therefore used both direct and

3

circumstantial evidence to prove that Morrow knew or should have known that the welder was stolen.

When the state proves an element of the offense with both direct and circumstantial evidence, but direct evidence alone adequately supports the element, the direct-evidence standard governs the insufficiency challenge. *See State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016) (applying the direct-evidence standard because the direct evidence presented by the state was sufficient by itself to support the disputed element). We therefore apply the direct-evidence standard to Morrow's evidence-insufficiency challenge.

When evaluating a sufficiency-of-the-evidence challenge, we "examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) (quotation omitted). A verdict will not be overturned if the jury, giving due regard to the presumption of innocence and the state's burden of proving an offense beyond a reasonable doubt, "could have reasonably found the defendant guilty of the charged offense." *Id.*

Morrow was convicted of receiving stolen property. *See* Minn. Stat. § 609.53, subd. 1 (2020). To be convicted, Morrow had to both (1) possess stolen property and (2) know or have "reason to know the property was stolen or obtained by robbery." *Id.* Morrow only challenges the second element of the offense, arguing that the state failed to produce sufficient evidence that he knew or had reason to know that the property he possessed was stolen. We are not persuaded.

4

D.P. testified that he and Morrow stole the welder, loaded it up on a trailer, and drove it back to Morrow's house. D.P.'s testimony alone supports the jury's verdict.

Morrow contends that we may not consider D.P.'s testimony because the jury acquitted him of burglary and theft and therefore discredited the testimony. But we have rejected this argument before. *See State v. Montermini*, 819 N.W.2d 447, 461 (Minn. App. 2012), *rev. denied* (Minn. Nov. 20, 2012). In *Montermini,* we observed that "acquittals shed no light on which circumstances the jury believed or disbelieved . . . [and] only demonstrate that the jury believed the state failed to establish the elements of [the acquitted charges]." *Id.*; *see also State v. Holbrook*, 233 N.W.2d 892, 894 (Minn. 1975) (reasoning that there "are several possible explanations, logical and otherwise, for the jury's finding defendant guilty only on [one charge]. The jury in the exercise of its power of lenity could have believed all of [the witness's] testimony and yet have convicted defendant on only the possession charge"). Here, the jury's acquittals say nothing about whether it credited D.P.'s testimony, and we assume the jury believed the state's witness, *State v. Foreman*, 680 N.W.2d 536, 538 (Minn. 2004). We conclude that sufficient evidence supports Morrow's conviction for receiving stolen property.

## II. The district court did not abuse its discretion by ordering Morrow to pay restitution.

Morrow contends that the district court abused its discretion when it ordered him to pay restitution for the stolen welder. This court reviews a restitution award for an abuse of discretion. *State v. Anderson*, 871 N.W.2d 910, 913 (Minn. 2015). A district court abuses

its discretion when it bases its decision on an erroneous view of the law or its decision "is against logic and the facts in the record." *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011).

As part of a felony sentence, a district court may order an offender to pay restitution. Minn. Stat. § 609.10, subd. 1(a)(5) (2020). When determining the amount of restitution, the district court is required to consider the loss sustained by the victim as a result of the offense. Minn. Stat. § 611A.045, subd. 1(a) (2020). But restitution may be ordered only "for losses that are directly caused by, or follow naturally as a consequence of, the defendant's crime." *State v. Boettcher*, 931 N.W.2d 376, 381 (Minn. 2019).

The district court ordered Morrow to pay $2,671.88 in restitution to the victim for his lost welder. The district court did not abuse its discretion in doing so. The record establishes that Morrow picked up the welder from the would-be buyer's farm, brought it home, and gave it to D.P. The victim in this case never received his welder back, and Morrow, who knew it was stolen, possessed the welder and took no actions to bring it to police or return it to its rightful owner. Morrow's crime directly caused the victim's losses.

Morrow argues that the district court imposed the incorrect legal standard when it found that Morrow's crime was "not tangential" to the victim's loss and that the case must therefore be remanded for application of the direct-causation standard in *Boettcher*. While the district court used the "not tangential" language from this court's decision in *State v. Miller*, 842 N.W.2d 474, 477 (Minn. App. 2014) (predating *Boettcher*), the district court also cited to *Boettcher* in its order and found that the damages were a "direct cause" of the

6

victim's loss. The district court applied the correct legal standard and did not abuse its discretion by ordering Morrow to pay restitution for the stolen welder.

**Affirmed.**