STATE OF MINNESOTA

IN SUPREME COURT

A22-1239

Court of Appeals                                         Thissen, J.
                              Concurring, McKeig, Chutich, Moore, III, JJ.
                                              Took no part, Hennesy, J.

Sean Michael Wocelka,

                    Appellant,

vs.                                                   Filed: July 17, 2024
                                              Office of Appellate Courts

State of Minnesota,

                    Respondent.

_____

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Robert J. Jarrett, Steele County Attorney, Julia A. Forbes, Assistant Steele County Attorney, Owatonna, Minnesota, for respondent.

_____

S Y L L A B U S

Minnesota Statutes section 609.343, subdivision 1 (2020), prohibits an actor's use of an object to make contact with a complainant's intimate parts.

Affirmed.

1

THISSEN, Justice.

We consider here whether Minnesota Statutes section 609.343, subdivision 1 (2020), prohibits an actor's use of an object to make contact with a complainant's intimate parts. That determination turns on the meaning of "sexual contact" which is defined in Minnesota Statutes section 609.341, subdivision 11(a)(i) (2022), as "the intentional touching by the actor of the complainant's intimate parts."

Following a jury trial and a verdict of guilt, the district court convicted appellant Sean Michael Wocelka of second-degree criminal sexual conduct, in violation of Minnesota Statutes section 609.343, subdivision 1(a) (2020).[1] That provision criminalizes sexual contact of a complainant under 13 years old by an actor who is more than 36 months older than the complainant. Wocelka petitioned for postconviction relief, contending that the evidence was insufficient to sustain his conviction because his conduct did not meet the statutory definition of "sexual contact." The postconviction court denied the petition as untimely and also because it failed on the merits. The court of appeals did not address whether the petition was untimely but rather affirmed the district court order on the merits. *Wocelka v. State*, 995 N.W.2d 12, 14–17 (Minn. App. 2023). We granted review.

Because an actor's use of an object to make contact with a complainant's intimate parts meets the definition of "sexual contact" under section 609.341, subdivision 11(a)(i),

---

[1]    In 2021, the subdivisions of the statute were amended and reorganized. Act of June 30, 2021, ch. 11, art. 4, § 17, 2021 Minn. Laws 1st Spec. Sess. 1947, 2041. We refer to the version in effect at the time of Wocelka's offense, which was unchanged until 2021.

and the evidence at trial was sufficient to show that Wocelka touched the complainant's intimate parts with a toy giraffe, we affirm the decision of the court of appeals upholding Wocelka's conviction for violating section 609.343, subdivision 1(a) (2020).

**FACTS**

In late December 2015, during a forensic interview with a child protection investigator, Wocelka's daughter disclosed that her father had touched her "private parts" using a toy giraffe. She described the location and timing of the touching, as well as how it made her feel. The touching had occurred shortly before Christmas. After the interview, officers obtained a search warrant. In the search of Wocelka's home, officers found a toy giraffe in the location that his daughter had described. The State charged Wocelka with three counts of second-degree criminal sexual conduct.[2]

Wocelka's daughter testified at trial, consistent with her statement to the child protection investigator. She testified that when she was at her father's house, he touched her vagina with the toy giraffe when he thought she was sleeping. She described the toy and said that it made her "very, very scared" when Wocelka touched her at night. She testified that the last time Wocelka touched her was the Thursday before Christmas in 2015. The State also submitted a recording of the December 2015 forensic interview of Wocelka's daughter that was admitted without objection.

---

[2]    Citing Minnesota Statutes section 609.343 (2020), the State charged the following: Count I for multiple acts of sexual contact over an extended time, *id.*, subd. 1(h)(iii); Count II for sexual contact with a victim under 16 years of age with a significant relationship, *id.*, subd. 1(g); and Count III for sexual contact with a victim under 13 by an actor more than 36 months older than the victim. *Id.*, subd. 1(a). Counts II and III each arose out of the December 2015, alleged touching.

3

Wocelka did not testify in his own defense. The defense called a forensic psychologist to testify to the "continuing process" of memory reconstruction and to challenge the interviewing technique of the child protection investigator. The State called a rebuttal witness, a forensic interviewer, and trainer at a child advocacy center, to bolster the credibility of the forensic interview.

The jury found Wocelka guilty of two counts of second-degree criminal sexual conduct, in violation of Minnesota Statutes section 609.343, subdivision 1(a), (g) (2020), for the December 2015 incident. At sentencing, he was convicted of one count under subdivision 1(a) for sexual contact of a complainant under 13 years old by an actor who is more than 36 months older than the complainant.

In June 2021, Wocelka petitioned for postconviction relief. He argued that his conduct was not prohibited under section 609.343, subdivision 1(a), and that his conviction should therefore be vacated. The district court denied his petition both as untimely and on the merits. Wocelka appealed both issues to the court of appeals. The court of appeals concluded that his claim failed because the definition of "touching" was not as narrow as he advocated and that bringing the toy into contact with his daughter's intimate parts was "touching" under section 609.341, subdivision 11(a)(i). *Wocelka*, 995 N.W.2d at 14–17. The court of appeals did not reach the issue of timeliness. *Id.* at 14.

We granted Wocelka's petition for review of the decision of the court of appeals.[3]

---

[3] Wocelka only petitioned for review of the statutory interpretation issue. In its brief, the State raised the untimeliness of Wocelka's petition for postconviction relief. The State did not file a cross-petition for review of that issue. Although the State did not file a cross-petition for review, we have discretion to decide the timeliness issue. *See* Minn. R.

## ANALYSIS

Wocelka was convicted of second-degree criminal sexual conduct for engaging in sexual contact with his young daughter. Minn. Stat. § 609.343, subd. 1(a) (2020). That provision states:

> A person who engages in *sexual contact* with another person is guilty of criminal sexual conduct in the second degree if any of the following circumstances exists:
>
> (a)    the complainant is under 13 years of age and the actor is more than 36 months older than the complainant.

Minn. Stat. § 609.343, subd. 1(a) (emphasis added). The Legislature has defined "sexual contact" as follows:

> (a) "Sexual contact," for the purposes of section[] 609.343, subdivision 1, clauses (a) to (e) . . . includes any of the following acts committed without the complainant's consent, except in those cases where consent is not a defense, and committed with sexual or aggressive intent:
> (i) the intentional touching by the actor of the complainant's intimate parts, or . . .
> (iv) in any of the cases above, the touching of the clothing covering the immediate area of the intimate parts, or
> (v) the intentional touching with seminal fluid or sperm by the actor of the complainant's body or the clothing covering the complainant's body.

Minn. Stat. § 609.341, subd. 11(a) (2022).

---

Crim. P. 29.04, subd. 6 ("The court may permit a party, without filing a cross-petition, to defend a decision or judgment on any ground that the law and record permit that would not expand the relief that has been granted to the party."). Here, however, because the statutory interpretation question is well-briefed, is appealed from a precedential court of appeals decision, and is a matter of statewide importance, we believe that it is in the interests of judicial economy and the interests of justice to, within our discretion, decline to consider the timeliness issue and instead resolve this case on the merits of the statutory interpretation issue.

Wocelka contends that the evidence supporting his conviction for second-degree criminal sexual conduct is insufficient because bringing an object into contact with a complainant's intimate parts is not "touching" within the meaning of section 609.341, subdivision 11(a). "A claim of insufficient evidence that turns on the meaning of the statute under which the defendant was convicted presents an issue of statutory interpretation that we review de novo." *State v. Stone*, 995 N.W.2d 617, 621–22 (Minn. 2023).

A.

Every member of the court agrees that Wocelka's understanding of the word "touching" in section 609.341, subdivision 11(a) is too narrow. We unanimously hold that the term "touching" in Minnesota Statutes section 609.341, subdivision 11(a)(i), broadly means bringing into contact with and does not require that the "touching" involve contact by a body part of the perpetrator with the complainant's intimate parts. Therefore, we hold that Minnesota Statutes section 609.343, subdivision 1(a) (2020), prohibits an actor's use of an object to make contact with a complainant's intimate parts. The evidence in this case was sufficient to support Wocelka's conviction for second-degree criminal sexual conduct.

B.

The disagreement in our positions is solely about the statutory interpretation methodology we follow to reach our unanimous holding. The aim of statutory interpretation is to understand and effectuate the Legislature's intent. *Nash v. Comm'r of Pub. Safety*, 14 N.W.3d 812, 816 (Minn. 2024). Our relatively longstanding position has been that "[t]he plain language of the statute controls when the meaning of the statute is

6

unambiguous." *State v. Boecker*, 893 N.W.2d 348, 351 (Minn. 2017). "The language of a statute is unambiguous when there is only one reasonable way to read the text." *Nash*, 14 N.W.2d at 816 (internal quotation marks omitted) (citation omitted). Furthermore, we determine plain meaning by looking to the text and textual context of the statute. *See State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019) (stating that the plain meaning of the statute is determined by construing words and phrases according to the rules of grammar and their common and approved use). Among the textual clues we may consider in determining the meaning of the words of a statute are dictionary definitions. *State v. Beganovic*, 991 N.W.2d 638, 643 (Minn. 2023) (stating that "we may consult dictionary definitions as part of th[e] inquiry" into a statute's plain meaning).

1.

We begin by examining whether the term "touching" in section 609.341, subdivision 11(a) is ambiguous. Both parties point to dictionary definitions to support their respective understandings of the ordinary meaning of the word "touching." Wocelka relies on a common dictionary definition that would require a part of the perpetrator's body to come into contact with the complainant's intimate part so as to feel the contact. *See The American Heritage Dictionary of the English Language* 1892 (3d ed. 1992) (defining "touch" as "[t]o cause or permit a part of the body, especially the hand or fingers, to come in contact with so as to feel"); *Webster's Third New International Dictionary* 2415 (1976) (defining "touch" as "to bring a bodily part briefly into contact with, so as to feel"). The State maintains, by contrast, that the term "touching" has commonly been understood to have a broad meaning that includes not only having a sensory feeling of touching, but also

7

bringing something into contact with something else. *See Wocelka*, 995 N.W.2d at 15; *The American Heritage Dictionary of the English Language* 1357 (1969) (defining "touch" as "to bring something into contact with").

By simply looking at the words of the statute, we cannot rule out either of these common and accepted understandings of the ordinary meaning of the word "touching."

i.

Wocelka makes several textual arguments that the definition offered by the State is unreasonable. First, Wocelka claims that the meaning of "touching" urged by the State is unreasonable because the provision specifies that the touching must be done "by the actor." In this case, he asserts that the touching was done by the object and not "by the actor." We do not find the argument persuasive. It was "the actor" who brought the object into contact with the intimate parts. Wocelka draws too fine a distinction as a matter of ordinary English.

As importantly, Wocelka's argument is only meaningful if one assumes Wocelka's definition is correct to begin with. If one accepts Wocelka's definition—that touching requires a part of the perpetrator's body to come into contact with the complainant's intimate part so as for the perpetrator to feel the contact—then there may be a meaningful difference between an actor's hand touching the complainant's intimate parts and an object held by the actor touching the intimate parts. But that is not the proper starting point for establishing that the State's broader definition is unreasonable. To show that the *State's* definition is unreasonable, Wocelka must start with the definition offered by the *State*. And if we start there, Wocelka's argument does not withstand scrutiny. If the definition is to

8

"bring something into contact with," then the actor—by bringing an object into contact with the intimate part—*is* doing the touching.

Wocelka also points to a different definition in the same section—the definition of sexual penetration in Minn. Stat. § 609.341, subd. 12 (2018). We may consider this other definition pre-ambiguity because the definitions for "sexual contact" in subdivision 11 and the definition of "sexual penetration" in subdivision 12 were adopted at the same time as part of the same enactment, Act of June 5, 1975, ch. 374, § 2, 1975 Minn. Laws 1243, 1245, and for the same purpose (to provide statutory definitions for Minnesota's criminal sexual conduct laws). *See Beganovic*, 991 N.W.2d at 645.

> Subdivision 12 provides:
>
> "Sexual penetration" means any of the following acts committed without the complainant's consent, except in those cases where consent is not a defense, whether or not emission of semen occurs:
> (1) sexual intercourse, cunnilingus, fellatio, or anal intercourse; or
> (2) any intrusion however slight into the genital or anal openings:
> (i) of the complainant's body by any part of the actor's body or any object used by the actor for this purpose . . . .

Minn. Stat. § 609.341, subd. 12 (2018). Wocelka observes that the definition of sexual penetration expressly distinguishes between an "actor's body" and "any object used by the actor." Wocelka contends that the Legislature did not intend the use of an object as a means of sexual contact to be criminalized because the Legislature expressly mentioned an object used by the actor in the definition of "sexual penetration" but did not mention the use of an object in the definition of "sexual contact."

We disagree. First, Wocelka's argument suffers from the same flaw as his previous argument. He assumes *his* definition is the starting point for the analysis of

9

the unreasonableness of the *State's* definition. If we assume Wocelka's definition is correct—that touching means touching by part of the actor's body—then the absence of a reference to use of an object in the "sexual contact" definition is a meaningful silence. But if one starts with the State's definition of touching, which covers both contact by a body part or by an object, the Legislature had no reason to draw such a distinction; "touching" already includes both body part and object. Further, the definition of sexual penetration upon which Wocelka focuses turns not on the act of "touching" but rather the act of "intrusion." Unlike definitions of the word "touching," no definition of the word "intrusion" identifies the type of things that do the intruding. Thus, the Legislature's specificity in the definition of sexual penetration was necessary in a way it was not in the definition of "sexual contact."

Finally, Wocelka points out that in 2009, the Legislature added a more specific, alternative definition of "sexual contact": "the intentional touching with seminal fluid or sperm by the actor of the complainant's body or the clothing covering the complainant's body." Act of May 11, 2009, ch. 59, art. 1, § 5, 2009 Minn. Laws 346, 349 (codified at Minn. Stat. § 609.341, subd. 11(a)(v)). He notes that when the new definition was added, the statute already defined "sexual contact" as "the intentional touching by the actor of the complainant's intimate parts . . . [including] the touching of the clothing covering the immediate area of the intimate parts." Minn. Stat. § 609.341, subd. 11(a)(i), (iv) (2008).

Wocelka argues that if we accept the broader ordinary meaning of touching—to bring something into contact with—there was no reason for the Legislature to add the new language. The conduct prohibited in the added provision—the actor is prohibiting from

10

bringing seminal fluid or sperm into contact with the complainant's body or the clothing covering the complainant's body—is already covered. But that is not true. The new definition includes contact between seminal fluid or sperm and *any* part of the complainant's body or the clothing covering the complainant's body; the definition in section 609.341, subdivision 11(a)(i), is limited to the touching of intimate parts. The new definition is not rendered superfluous if the State's definition is accepted. In sum, we conclude that the State's position—that "touching" means bringing something into contact with—is reasonable.

ii.

The State similarly asserts, based on the text of the statute, that Wocelka's proposed definition of "touching" is unreasonable. We find the State's arguments equally unavailing.

First, the State argues that to accept Wocelka's definition, we would have to add the words "with a body part" to the statute. But as with Wocelka's second argument above, the State is starting with the wrong definition. The argument only holds water if one starts by assuming the State's definition is correct. If one begins with the assumption that the Legislature was using the word "touching" in the way Wocelka proposes, then the words "with a body part" are already inherently embedded in the statute. According to Wocelka, the word "touching" already includes the requirement that a part of the perpetrator's body come into contact with the complainant's intimate parts. Thus, taking Wocelka's definition of the word "touching" as the starting point, we need add no words to the statute to find Wocelka's definition reasonable because those words are already there.

11

The State (following the court of appeals) next points out that the Legislature's definition of "sexual contact" in section 609.341, subdivision 11(a)(i), refers to the complainant's body part but does not mention a body part of the actor. The State argues that this shows the Legislature knew how to refer to a body part and, because it did not do so in relation to the actor, the Legislature did not intend that the touching had to be done by a body part. But once again, the State is starting with the wrong definition. If you start with Wocelka's definition that touching means bringing a bodily part into contact with so as to feel there would be no need for the Legislature to refer to the actor's body part. In other words, when the Legislature used the word "touching" it already understood the word to mean touching with the actor's body part. Thus, the Legislature did not need to refer to the actor's body part again. Consequently, the argument cannot be used to prove that Wocelka's definition is unreasonable.

The concurrence offers a variation on this argument. It states that Wocelka's definition of section 609.341, subdivision 11(a)(i), reads out of the statute the words "of the complainant's intimate parts." The argument is that "Wocelka focuses on only *his* sensations and body parts, which reads the complainant and *their* intimate parts out of the definition almost entirely." *Infra* at C-5. We disagree.

It is true that Wocelka's understanding of the word "touching" requires that a body part of the perpetrator touches so as to feel the complainant's intimate parts. But that fact does not mean that contact with the complainant's intimate parts becomes irrelevant to the analysis. Both things could be true. Focusing just on the text of the statute, one could reasonably read it to say that the Legislature required two things: (1) intentional contact by

12

a body part of the perpetrator so as to feel and (2) the body part made contact with the complainant's intimate parts.[4] The first requirement, even if it does require sensation, does not of necessity exclude the second. In short, nothing in the *words* of the statute—"sexual contact" includes "the intentional touching by the actor of the complainant's intimate parts"—excludes Wocelka's interpretation as a matter of reading the text.

In the end, the concurrence's position is that Wocelka's definition is unreasonable because it may allow for outcomes where a perpetrator who has no sense of sensation is not criminally liable; an outcome that it and perhaps many others would consider unreasonable. Stated another way, the concurrence asserts that it is unreasonable to think that the Legislature would have enacted, and the Governor would have signed, a statute that so limited the meaning of "sexual contact." But that is not the proper inquiry under our current method for determining whether a statute is ambiguous. *State v. Smith*, 899 N.W.2d 120, 125 (Minn. 2017) (stating that "[a]lthough it is odd, perhaps even anomalous, for the Legislature to have included less-serious crimes as prior impaired-driving convictions, but not Smith's [more serious] 2005 offense, anomalous results, even if they are the product of inadvertence, do not allow us to ignore the plain

---

[4]    Moreover, the definition of "sexual contact" does not require as an element of the State's proof that complainants feel the contact with their intimate parts. *See, e.g.*, Minn. Stat. § 609.343, subd. 1(e)(ii) (2018) (providing that "[a] person who engages in sexual contact with another person is guilty of criminal sexual conduct in the second degree if . . . (e) the actor causes personal injury to the complainant, and either of the following circumstances exist: . . . (ii) the actor knows or has reason to know that the complainant is . . . physically helpless"); Minn. Stat. § 609.341, subd. 9(a) (2022) (defining "physically helpless" to include a person who is "asleep or not conscious").

language of the statute"). The Legislature is free to enact statutes that are broader or more limited than we (or the people of Minnesota) believe makes sense.

In the threshold step of determining whether a statute is ambiguous, the question is not whether we think *a result* authorized by the ordinary meaning of the words is reasonable; the question is whether the words used by the Legislature plausibly support more than one reasonable reading of the statute. And here, there are two ordinary meanings of the word "touching," and nothing in the text of the statutory provision rules out either of those ordinary meanings as unreasonable.

A case that the State cites, *State v. Prigge*, 907 N.W.2d 635 (Minn. 2018), illustrates this point. The State cites *Prigge* precisely for the general principle that not all plausible definitions of a word are reasonable depending on context. The principle is undoubtedly true, but it is of no assistance to the State here.

In *Prigge*, we were asked to determine the meaning of the phrase "carry[ing] a pistol on or about the person's clothes or person" as used in Minn. Stat. § 624.7142, subd. 1 (2016). 907 N.W.2d at 637. The defendant was in a car and the pistol was found in the vehicle's center console. *Id.* The defendant argued that a pistol found in the center console was not carried on or about the defendant's clothes or person. *Id.*

We rejected that argument. We looked to definitions of the word "carry" and narrowed down those definitions to three: "(1) '[t]o hold or support while moving; bear,' (2) '[t]o move or take from one place to another; transport: *a train carrying freight*,' and (3) '[t]o keep or have on one's person.' " *Id.* at 638–39 (alterations in original) (citation omitted). We then eliminated the third definition because the word "carry" was used in

14

connection with the phrase "on or about." *Id.* at 639. We observed that the disjunctive "or" meant that "on" and "about" must mean different things. *Id.* Thus, we concluded that the third definition of "carry"—limited as it was to keeping or having something *on* one's person—could not be the definition because the text itself stated that the pistol need not be "on" the person. That definition ignored the word "about" in the provision. *Id.* The State points to no similar *textual* context (as opposed to the perceived unreasonableness of an outcome) that eliminates one of the two competing definitions of "touching" in section 609.341, subdivision 11(a)(i).

Ultimately, as we discuss below, the entire court agrees that Wocelka's definition of "touching" is inconsistent with the broad purpose of Minnesota's criminal sexual conduct statutes. Our basic disagreement with the concurrence is that we cannot find that broad purpose stated in the *text* of the specific section we are interpreting, section 609.341, subdivision 11. And our conclusion is that our current method of statutory interpretation does not extend to allow consideration of the broader purpose of Minn. Stat. §§ 609.341–609.351. That is not to say that the concurrence's approach is incorrect, but we are not asked in this case to revisit how we have approached statutory interpretation questions in recent decades.

2.

Having concluded that the statute is ambiguous because there are two reasonable ordinary meanings of the word touching, we turn to other non-textual clues to resolve the ambiguity. *Pakhnyuk*, 926 N.W.2d at 924. In this case, the purpose of the statute provides

15

the strongest guidance on the Legislature's intent. *See Fordyce v. State*, 994 N.W.2d 893, 901 (Minn. 2023) (considering the purpose of a statute in resolving ambiguity).

A broad purpose of Minnesota's criminal sexual conduct statutes is to prevent the harm suffered by persons who are subject to unwanted sexual contact by deterring such unwanted sexual contact through criminal sanction. The harm to the complainant from unwanted touching of the person's intimate parts is the same whether done by a body part of the perpetrator or an object held by the perpetrator. Wocelka's narrow definition of touching does not serve the purpose of Minnesota's criminal sexual conduct as well as the State's broader definition; something the entire court agrees upon.

Wocelka also asks us to invoke the rule of lenity and interpret the statute as he proposes. The rule of lenity applies only if ambiguity remains after all the other available canons of construction are applied and we still have not uncovered what the ambiguous provision means. *State v. Thonesavanh*, 904 N.W.2d 432, 440 (Minn. 2017) (stating that "the rule of lenity applies only after the other canons of construction have been exhausted and what remains is a grievously ambiguous statute"). After considering the purpose of Minnesota's criminal sexual conduct statutes, we do not find the statute so grievously ambiguous that we must resort to the rule of lenity.

In sum, applying the proper meaning of "touching" in section 609.341, subdivision 11, we hold that section 609.343, subdivision 1, prohibits an actor's use of an object to make contact with a complainant's intimate parts.

16

C.

Wocelka appeals his conviction solely on statutory interpretation grounds.  He does not claim that the evidence is insufficient to establish that he touched his daughter's intimate parts with an object.  Nor does he raise any argument that he did not have the required "sexual or aggressive intent."  *See* Minn. Stat. § 609.341, subd. 11(a) (2018).  Because the jury found that he touched his daughter's intimate parts with a toy, Wocelka violated section 609.343, subdivision 1(a), and we affirm his conviction.

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.


HENNESY, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

17

CONCURRENCE

MCKEIG, Justice (concurring).

I agree with the result of the court's opinion and join Parts A and C, which affirms the holding that the evidence in this case was sufficient to show that Sean Michael Wocelka's conduct was "touching" within the meaning of the sexual-contact definition in Minnesota Statutes section 609.341, subdivision 11 (2022). I disagree, however, with the conclusion that the term "touching" is ambiguous because the *only* reasonable interpretation of the term in its statutory context is a broad, common-sense definition. For this reason, I respectfully concur.

Wocelka was found guilty of two counts of second-degree criminal sexual conduct for visiting his young daughter's bedroom when he thought she was sleeping and touching her bare vagina with a toy giraffe. *See* Minn. Stat. § 609.343, subd. 1(a), (g) (2020). An element of those crimes requires "sexual contact with another person." *Id.* "Sexual contact," for purposes of Wocelka's crimes and of his appeal to this court, is defined as "the intentional *touching* by the actor of the complainant's intimate parts." Minn. Stat. § 609.341, subd. 11(a)(i) (emphasis added). The parties disagree on the meaning of the term "touching," which has no statutory definition, so we must engage in statutory interpretation to discern its meaning.

Questions of statutory interpretation are reviewed de novo. *State v. Abdus-Salam*, 1 N.W.3d 871, 874 (Minn. 2024). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2022). If the Legislature's intent "is clear from the statute's plain and unambiguous language, then

C-1

we interpret the statute according to its plain meaning." *State v. Cummings*, 2 N.W.3d 528, 533 (Minn. 2024) (internal quotation marks omitted) (citation omitted). We find statutory language to be unambiguous if it has only one reasonable interpretation. *Abdus-Salam*, 1 N.W.3d at 877.

The State and Wocelka offer different definitions of the word "touch."[1] The State proposes a broad definition to mean, simply, bringing something into contact with something else. All members of the court agree that the State's definition is reasonable. Wocelka claims that an alternative reasonable interpretation of the word "touch" requires that the actor's own body part physically come into contact with the complainant's intimate parts, and that the actor must experience a "sense of feeling" to have "touched" the complainant under Minnesota's criminal sexual conduct definitions. Although the court comes to the appropriate conclusion today of affirming Wocelka's guilt, the court's opinion also finds Wocelka's definition of the word "touch" in the statutory definition section of criminal sexual conduct to be reasonable, and the term to therefore be ambiguous.

The court's opinion bases its finding of ambiguity solely on the fact that dictionaries offer differing commonly understood and accepted definitions of the word "touch," and its analysis goes no deeper than simply acknowledging that multiple, common definitions exist for the word. I agree that Wocelka provides a definition of the word "touch" that is commonly understood and accepted. But I do not agree that this is enough for the court to

---

[1] The term, as used in the statute, is technically the active form: "touching." *See* Minn. Stat. § 609.341, subd. 11(a)(i) (2022). However, the parties analyze and often refer more generally to the root word "touch." Here, I use the terms interchangeably.

find ambiguity. By relying on dictionary definitions alone, finding the State's arguments regarding Wocelka's interpretation unavailing, and summarily declaring ambiguity, the analysis in the court's opinion does not engage with the statutory context informing the meaning of the word at issue or our other pre-ambiguity canons of statutory interpretation. In other words, the court's opinion rejects certain arguments that suggest Wocelka's definition is *unreasonable*, but never quite explains how his preferred definition is *reasonable*—other than citing its presence in a dictionary.

When interpreting statutes, we must construe words and phrases "according to rules of grammar and according to their common and approved usage," unless such "observance would involve a construction . . . repugnant *to the context of the statute*." Minn. Stat. § 645.08(1) (2022) (emphasis added). The whole-statute canon explains this concept, and "provides that a statute should be read and construed as a whole so as to harmonize and give effect to all its parts." *State v. Johnson*, 995 N.W.2d 155, 160 (Minn. 2023); *see also State v. Friese*, 959 N.W.2d 205, 212 (Minn. 2021)). Because this canon applies when determining whether statutory language is ambiguous, it is a pre-ambiguity canon. *See State v. Beganovic*, 991 N.W.2d 638, 645 (Minn. 2023).

When looking for ambiguity, we often turn to dictionaries to find reasonable interpretations. *See Abdus-Salam*, 1 N.W.3d at 877. To that end, when determining which of multiple "dictionary definitions apply, we consider the statutory context." *Johnson*, 995 N.W.2d at 160. But we must also "*set aside* dictionary definitions when context makes clear that dictionary definitions may not fit." *State v. Scovel*, 916 N.W.2d 550, 555 (Minn. 2018) (emphasis added); *see also City of Brainerd v. Brainerd Invs. P'ship*,

827 N.W.2d 752, 760 (Minn. 2013) (Anderson, J., dissenting) ("[W]e must not look simply at a dictionary definition . . . . Instead, we *must* assess whether applying the dictionary definition makes sense in context."). Accordingly, when determining the common meaning of a word as it relates to the statute in which it is found, the "words of a statute are to be viewed in their setting, not isolated from their context." *Chiodo v. Bd. of Educ. of Special Sch. Dist. No. 1*, 215 N.W.2d 806, 808 (Minn. 1974). Because Wocelka's dictionary-supported interpretation of the word "touch" is simply not reasonable in the context of the whole statute in which it is found, I disagree with the conclusion that the term is ambiguous.

Our analysis in *State v. Alarcon*, 932 N.W.2d 641, 645–47 (Minn. 2019), is instructive, where we analyzed the phrase "leaves a primary address." *See* Minn. Stat. § 243.166, subd. 3a(a) (2018). The term "leave" was found to have more than one logical dictionary definition—either a permanent departure or a temporary one—so we were required to "look beyond the dictionary to ascertain what the Legislature meant by the phrase." *Alarcon*, 932 N.W.2d at 646. There, we found separate provisions in Minnesota Statutes section 243.166 (2018), to be helpful when analyzing the language at issue. *Alarcon*, 932 N.W.2d at 646. First, the court considered that the statute only applied if a person "leaves a primary address and does not have a new primary address." *Alarcon*, 932 N.W.2d at 647. We reasoned that "for an offender to leave a primary address and no longer have a primary address, the circumstances of his departure must show that his living arrangement at the address has ended." *Id.* Also, the inclusion of a distinction between a "primary address" and a "secondary address" in the statute was indicative of the

Legislature's intent that those addresses be considered distinct from one another, which supported the "permanent" interpretation of "leave." *Id.* We ultimately concluded that the term "leaves" in the context of the statute unambiguously meant a permanent departure— despite dictionary definitions that suggested otherwise. *Id.*

Here, analyzing the entire phrase at issue is also helpful. As noted, "sexual contact" is defined, in part, as "the intentional touching by the actor *of the complainant's intimate parts*." Minn. Stat. § 609.341, subd. 11(a)(i) (emphasis added). Wocelka focuses on only *his* sensations and body parts, which reads the complainant and *their* intimate parts out of the definition almost entirely. Whether a complainant is touched on their intimate parts with a hand or with a toy makes no difference to whether the complainant's intimate parts were touched or whether the actor did that touching. According to the court's opinion, my argument is that Wocelka's interpretation would "mean that contact with the complainant's intimate parts becomes irrelevant to the analysis"—but that misses the point. If, as the court's opinion suggests, the Legislature may have "required two things: (1) intentional contact by a body part of the perpetrator so as to feel and (2) the body part made contact with the complainant's intimate parts," *the complainant's body part would still have to be touched*. If we accept Wocelka's definition as reasonable, we then find reasonable the idea that a person could put on a pair of gloves, prod a complainant's intimate parts, and be found not to have "touched" them under the plain language of the statute. That, to me, stretches reasonability beyond its outer limits.[2]

---

[2]     Wocelka's interpretation raises the question: if a father causes a toy giraffe to come into contact with his daughter's vagina, was she even touched?

Delving further into absurdity, Wocelka argues that "[w]hen an actor brings an object into contact with the complainant's intimate parts, the touching has been done by the object, not 'by the actor.'" *See* Minn. Stat. § 609.341, subd. 11(a)(i). If a complainant was touched in their intimate parts by something other than a body part, this interpretation would illogically transform the inanimate object into the "actor," and seemingly absolve the *actual* actor of any affirmative act.

Additionally, if the Legislature had intended for the touching to be limited to *only* an offender's body part, it could have simply said so. Under the statutory definition, "sexual contact" may also include "the intentional touching with seminal fluid or sperm by the actor of the complainant's body or the clothing covering the complainant's body," so the Legislature clearly knows how to specify when touching with a specific "thing" is essential. Minn. Stat. § 609.341, subd. 11(a)(v). This clear specification—which also requires the act of "touching"—effectively narrows what thing the actor must cause to come into contact with the complainant. Notably absent in subdivision 11(a)(i) is any similar narrowing, nor present is the crucial "with" found in subdivision 11(a)(v). The definition at issue does not specify intentional touching by the actor *with* anything in particular, instead requiring a broad, unrestricted interpretation. *See* Minn. Stat. § 609.341, subd. 11(a)(i). We interpret the omission of language from one provision of a statute which exists in a distinct, similar provision as "intentional and decline to add . . . words where the Legislature did not." *State v. Schwartz*, 957 N.W.2d 414, 419 (Minn. 2021).[3] To narrow

_____

[3]     Note that the Legislature *has* specified precisely the broad definition that the State proposes in the "sexual penetration" definition. There, "any intrusion however slight into

C-6

the "touching" in section 609.341, subdivision 11(a)(i) to anything other than the causing of a physical object to come into contact with the complainant's intimate parts inappropriately adds a restriction that is simply not present in the statute.

Ultimately, the court comes to the correct conclusion today. After all, the purpose behind the criminal sexual assault statutes—to protect complainants from sexual assault— shows that the object with which an actor touches a complainant's intimate parts is irrelevant when finding that criminal "sexual contact" has occurred.[4] But performing a post-ambiguity purpose analysis is unnecessary because, based on the context of the statute in which it is found, the only reasonable interpretation of "touching" in Minnesota Statutes section 609.341, subdivision 11(a)(i), is the broad, plain-language definition "to bring something into contact with."

---

the genital or anal openings . . . of the complainant's body *by any part of the actor's body or any object used by the actor for this purpose*" is considered sexual penetration. Minn. Stat. § 609.341, subd. 12(2)(i) (2022) (emphasis added). If this language had been included in the "sexual contact" definition at issue, this discussion would obviously be unnecessary. But I would argue that the meaning of "intrusion" is less obvious than "touching" in this context, so the further explanation by the Legislature in the "sexual penetration" definition makes sense.

[4] The court also claims that my argument is simply that "it is unreasonable to think that the Legislature would have enacted, and the Governor would have signed, a statute that so limited the meaning of 'sexual contact.' " It is, in fact, true that this would be unreasonable, but it is unclear where, exactly, in this writing I have considered the Legislature's or the Governor's thoughts, or the purpose behind Minnesota's sexual assault statutes—apart from the lone sentence this footnote appends. My argument focuses solely on whether Wocelka's definition is reasonable within the context of the statute itself. But because his definition is simply not reasonable, considering the purpose of the statute is unnecessary.

CHUTICH, Justice (concurring).

I join Parts A and C of the majority opinion and in the concurrence of Justice McKeig.


MOORE, III, Justice (concurring).

I join Parts A and C of the majority opinion and in the concurrence of Justice McKeig.