# STATE OF MINNESOTA
## IN COURT OF APPEALS
### A25-0268

State of Minnesota,
Respondent,

vs.

Jim Duramax Whitcomb,
Appellant.

**Filed January 20, 2026**
**Affirmed**
**Frisch, Chief Judge**

Crow Wing County District Court
File No. 18-CR-22-3726

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kelsey A. Hopps, Crow Wing County Attorney, Brainerd, Minnesota; and

Travis J. Smith, Special Assistant County Attorney, Slayton, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Frisch, Chief Judge; Worke, Judge; and Cochran, Judge.

## SYLLABUS

For possession of pornographic work involving a minor, cloud storage is a "storage system of any other type" within the meaning of Minn. Stat. § 617.247, subd. 4(a) (2020).

## OPINION

**FRISCH**, Chief Judge

Appellant Jim Duramax Whitcomb challenges his convictions of 12 counts of possession of pornographic works involving a minor under 14 years of age, in violation of

Minn. Stat. § 617.247, subd. 4(b)(3) (2020). He seeks reversal of his convictions, alleging that the evidence is insufficient to prove that (1) he possessed child pornography or a storage system containing child pornography and (2) he knew or had reason to know the content and character of the child pornography. Because we conclude that the evidence is sufficient to support the convictions, we affirm.

**FACTS**

In September 2021, the National Center for Missing and Exploited Children (NCMEC) received nine tips from Google regarding suspected child pornography downloaded in Minnesota. NCMEC reported these tips to the Minnesota Bureau of Criminal Apprehension (BCA). The BCA subpoenaed Google, and internet providers Spectrum[1] and the Consolidated Telecommunications Company (CTC). Google provided the BCA with general subscriber information identifying the Google cloud account[2] that downloaded the child pornography, the date the account was created, and a list of IP

---

[1] Spectrum was formerly known and referenced during trial as "Charter."

[2] Every Google Account includes cloud storage, shared across Gmail, Google Drive, and Google Photos. *How your Google storage works*, Gmail Help (2025), https://support.google.com/mail/answer/9312312 [https://perma.cc/AES2-SJWR]. "Cloud Storage is a mode of computer data storage in which digital data is stored on servers in off-site locations." *What is Cloud Storage?*, Google Cloud (2025), https://cloud.google.com/learn/what-is-cloud-storage [https://perma.cc/N2BA-CARL]. "Cloud computing is the capacity of Internet-connected devices to display data stored on remote servers rather than on the device itself." *State v. Pauli*, 979 N.W.2d 39, 43 n.1 (Minn. 2022) (quoting *Riley v. California*, 573 U.S. 373, 397 (2014)).

addresses[3] that had accessed the account. The email address for the Google cloud account includes the name of Whitcomb's former girlfriend and her date of birth (the Google cloud account). Spectrum provided the BCA with subscriber information for the IP address identified by Google as having uploaded the photos to the Google cloud account. Spectrum identified appellant Jim Duramax Whitcomb in Crosby as the account subscriber associated with this IP address during the relevant time period.

In early December, law enforcement executed a search warrant at Whitcomb's home in Crosby. During the search, officers seized multiple devices. None of the seized devices contained child pornography.

On the same day, a BCA agent interviewed Whitcomb at his workplace. During the interview, Whitcomb informed the agent that:

- he lives at the Crosby home with his wife and stepdaughter;

- he started working at his workplace in May 2021 and his typical work schedule is 8:30 a.m. to 5:00 p.m.;

- he uses Spectrum internet and his name is on the Spectrum account;

- he has three email accounts, one of which included in the address the same four numbers reflecting his former girlfriend's birthdate—like the Google cloud account at issue here;

- he stores information, mostly photos, in his Google cloud account;

- only he and his wife have access to his cell phone;

---

[3] A Spectrum privacy specialist testified that the company identifies subscribers through a uniquely assigned IP address, which the specialist described as "a unique number that identifies the device such as a cable modem . . . that in turn identifies the subscriber . . . that's browsing the internet" and that only one device can use an IP address at a time.

- his wife would not be responsible for child pornography because she did not like child pornography;[4] and

- he has a curiosity about child pornography and that it "was more of a problem than he would like to admit."

In response to a search warrant, Google provided the BCA with the contents of the Google cloud account. The Google cloud account contained two folders: a general photos folder and a folder titled "For Our Special Little One." The general photos folder contained around 4,000 photos, the majority of which were adult pornography. The folder also contained photos of Whitcomb, his house, his wife, and his stepdaughter. Five sexually explicit photos that appeared to be of Whitcomb were also present in the general photos folder.

The "For Our Special Little One" folder contained over 160 photos, the majority of which were child pornography. The remaining photos in this folder were sexually explicit photos of Whitcomb and nonexplicit photos of his stepdaughter.

Respondent State of Minnesota charged Whitcomb with 12 counts of possession of pornographic works involving a minor under 14 years of age, in violation of Minn. Stat. § 617.247, subd. 4(b)(3).

At trial, the state called seven witnesses: Whitcomb's former girlfriend; Whitcomb's manager; a Google records custodian; a Spectrum privacy specialist; a CTC specialist; and two BCA agents. Whitcomb did not testify or call any witnesses.

---

[4] Whitcomb reiterated this statement about his wife at least three times during the interview.

Whitcomb's former girlfriend—whose name and birthdate comprise the email address associated with the Google cloud account—testified that she had been in a relationship with Whitcomb between 2012 and 2017 but had not seen him since September 2021. She testified to never having visited Whitcomb at his Crosby home or at his workplace. She testified that she did not create or use the Google cloud account. When asked if she knew of an email account in that name, former girlfriend said she was not sure, but that during her relationship with Whitcomb, he "made a lot of stuff" in her name. When asked the significance of the four numbers in the email address associated with the Google cloud account, former girlfriend said that the numbers reflected her birthdate. When shown a photo of Whitcomb and his wife which appeared in the Google cloud account, former girlfriend stated that Whitcomb's wife sent her that photo via Facebook messenger, but she did not remember when.

Whitcomb's manager testified that Whitcomb had been employed and worked at the job location between May and September 2021, that Whitcomb's normal work hours were 8:30 a.m. to 5:00 p.m., and that Whitcomb sometimes covered the after-hours service calls. The manager testified that he had seen Whitcomb use his cell phone at work, and that he sometimes saw Whitcomb's wife at his workplace, but she usually waited in the parking lot and did not enter the store.

A Google records custodian testified to the authenticity of records provided by Google, which included information about access times and corresponding IP addresses for the Google cloud account.

5

A Spectrum privacy specialist testified to the authenticity of documents provided by Spectrum, which identified multiple IP addresses associated with Whitcomb in Crosby, and the time period the IP addresses were linked to the Crosby home.

A CTC network manager testified that the IP address at Whitcomb's workplace did not change during the relevant time period. The Google subscriber information showed that the IP address at Whitcomb's workplace also accessed the email account between May and December 2021. And many of the logins to the Google account from this IP address occurred during Whitcomb's daily work schedule of 8:30 a.m. to 5:00 p.m.

Finally, two BCA agents testified. The BCA agent who interviewed Whitcomb at his workplace testified to their conversation. A separate BCA agent testified that, before cloud storage existed, it was more common to find child pornography on hard drives or desktops. The agent testified that a cloud storage account is a location where "you can store [images] . . . that you can access from any internet capable device and still access those images in folders and videos without actually having to have that as like a digital file in your photo gallery." The agent testified that, after receiving the tip from Google, the BCA sent subpoenas to Spectrum and Google. The agent testified as to the contents of the folders located in the cloud storage associated with the Google cloud account and produced in response to the subpoena, including: nine photos and three videos of child pornography that formed the basis for the charges, a photo of a liquor bottle that was also seen at Whitcomb's house during the search, photos of Whitcomb that appear to have been taken at the Crosby home, a photo of Whitcomb that appears to have been taken at his workplace, photos of Whitcomb's workplace, a photo of Whitcomb and his wife, and a photo of a

6

naked male that appears to be Whitcomb.

The jury found Whitcomb guilty of all 12 counts. Whitcomb appeals.

## ISSUES

I.      Is the evidence sufficient to prove that Whitcomb possessed child pornography or possessed a storage system containing child pornography?

II.     Is the evidence sufficient to prove that Whitcomb knew or should have known the content and character of the child pornography?

## ANALYSIS

Whitcomb challenges the sufficiency of the evidence underlying his 12 convictions of possession of pornographic works involving a minor under 14 years of age in violation of Minn. Stat. § 617.247, subd. 4(b)(3). Whitcomb argues that the state failed to prove beyond a reasonable doubt his possession of child pornography or of a storage system containing child pornography, and that he knew or should have known the content and character of the child pornography. The state counters that there was ample evidence presented at trial to convict Whitcomb.

"In a criminal proceeding, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the State must prove every element of the offense beyond a reasonable doubt." *State v. Culver*, 941 N.W.2d 134, 142 (Minn. 2020). To convict Whitcomb of possession of pornographic works involving a minor under 14, the state was required to prove that Whitcomb (1) possessed a pornographic work involving a minor under 14 or possessed a "storage system of any other type" containing a pornographic work involving a minor under 14 and (2) knew or had reason to know the

"content and character" of the pornographic work involving a minor under 14. Minn. Stat. § 617.247, subd. 4(a), (b)(3).

In considering a claim of insufficient evidence, we examine the record "to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) (quotation omitted). We view the evidence in the light most favorable to the verdict. *Id.* We assume that the fact-finder disbelieved any evidence that conflicted with the verdict. *Id*. We will not disturb the verdict if the fact-finder could reasonably conclude that the defendant was guilty of the charged offense. *Id.*

The applicable standard of review depends on whether the conviction is supported by direct or circumstantial evidence. *State v. Segura*, 2 N.W.3d 142, 155 (Minn. 2024). "[D]irect evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted). "[C]ircumstantial evidence . . . [is] evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *Id.* (quotation omitted). The parties do not dispute that the state offered circumstantial evidence in support of Whitcomb's convictions.

"Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). When an element of an offense is proved by

8

circumstantial evidence, we conduct a two-step analysis. *State v. Colgrove*, 996 N.W.2d 145, 150 (Minn. 2023). First, "we identify the circumstances proved." *State v. Hassan*, 977 N.W.2d 633, 640 (Minn. 2022). To identify the circumstances proved, we "winnow down the evidence presented at trial by resolving all questions of fact in favor of the jury's verdict." *Harris*, 895 N.W.2d at 600. "In determining the circumstances proved, we disregard evidence that is inconsistent with the jury's verdict." *Id.* at 601.

Second, we examine the reasonableness of all inferences that might be drawn from the circumstances proved. *State v. Noor*, 964 N.W.2d 424, 438 (Minn. 2021). "[W]e give no deference to the factfinder's choice between reasonable inferences." *State v. Andersen*, 784 N.W.2d 320, 329-30 (Minn. 2010) (quotation omitted). "The State's circumstantial evidence is sufficient when the reasonable inferences are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis other than guilt." *Hassan*, 977 N.W.2d at 640.

We begin our analysis by identifying the circumstances proved at trial. Those are:

- The Google cloud account was created on May 25, 2021, at an IP address associated with the Crosby home;

- The email address for the Google cloud account contains the name of Whitcomb's former girlfriend and her date of birth;

- Former girlfriend did not create the Google cloud account. She had never been to the Crosby home or Whitcomb's workplace;

- The naming convention in the email address is consistent with another email address for an account used by Whitcomb;

- The Google cloud account was accessed numerous times between May and December 2021 from two IP addresses associated with Whitcomb's home;

9

- The Google cloud account was accessed numerous times between May and December 2021 from an IP address associated with Whitcomb's workplace;

- An IP address can only be used by one device at a time;

- The Google cloud account access patterns at Whitcomb's workplace are consistent with Whitcomb's work schedule;

- Whitcomb's wife was known by the manager to pick up Whitcomb at the end of the day, but not to enter the lobby of his workplace;

- At trial, a BCA agent testified that a cloud storage account is where "you can store [images] . . . that you can access from any internet capable device and still access those images in folders and videos without actually having to have that as like a digital file in your photo gallery";

- The contents of the Google cloud account are stored in a cloud maintained by Google. The account contained two photo folders. The general photos folder contained around 4,000 files, including: sexually explicit photos of Whitcomb, photos of Whitcomb in his home, and photos of Whitcomb's wife and stepdaughter. The folder named "For Our Special Little One" contained nine photos of child pornography and three videos of child pornography. It also contained sexually explicit photos of Whitcomb and nonexplicit photos of his stepdaughter;

- Whitcomb admitted that his curiosity about child pornography "was more of a problem than he would like to admit"; and

- Whitcomb stated that his wife would not be responsible for child pornography because she did not like child pornography.

Having identified the circumstances proved, the next step in our analysis of the sufficiency of the evidence considers the reasonable inferences from these circumstances and whether they are "consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis other than guilt." *Segura*, 2 N.W.3d at 155 (quotation omitted). Here, the state was required to prove beyond a reasonable doubt that Whitcomb (1) possessed a pornographic work involving a minor under 14 or possessed a

"storage system of any other type" containing a pornographic work involving a minor under 14 and (2) knew or had reason to know the "content and character" of the pornographic work involving a minor under 14. Minn. Stat. § 617.247, subd. 4(a), (b)(3). The statute itself provides that the first element may be satisfied in one of two ways: proof of possession of a pornographic work involving a minor under 14 or proof of possession of a storage system containing a pornographic work involving a minor under 14. *See State v. Bakken*, 883 N.W.2d 264, 268 (Minn. 2016).

Whitcomb challenges the sufficiency of the state's evidence as to both elements. As to the first element, Whitcomb argues that the evidence is not sufficient to prove that he possessed pornographic works involving a minor under 14 or a storage system containing pornographic works involving a minor under 14. As to the second element, he argues that the evidence is not sufficient to prove that he knew or had reason to know the content and character of the pornographic works involving a minor under 14 stored in the cloud storage associated with the Google cloud account. We address each argument below.

I. **The evidence is sufficient to prove that Whitcomb possessed child pornography.**

Whitcomb argues that the state's evidence was insufficient to prove that he possessed child pornography because (1) a Google cloud account is not a storage system of any other type within the meaning of Minn. Stat. § 617.247, subd. 4(a), and (2) the evidence was insufficient to prove that he actually or constructively possessed child pornography. We address each issue in turn.

11

**A.    A Google cloud account is a "storage system of any other type" within the meaning of Minn. Stat. § 617.247, subd. 4(a).**

Whitcomb argues that cloud storage of the content of a Google account is not "a storage system of any other type" within the meaning of Minn. Stat. § 617.247, subd. 4(a). He asserts that the term "storage system" is undefined, that cloud storage was not publicly available when the legislature drafted the relevant portion of the statute, and the legislature therefore could not have intended to include cloud storage as a "storage system of any other type" within the meaning of Minn. Stat. § 617.247, subd. 4(a). We disagree.

"A claim of insufficient evidence that turns on the meaning of the statute under which the defendant was convicted presents an issue of statutory interpretation that we review de novo." *State v. Stone*, 995 N.W.2d 617, 621-22 (Minn. 2023). The goal of statutory interpretation is to ascertain and effectuate the intent of the legislature. Minn. Stat. § 645.16 (2024); *Bakken*, 883 N.W.2d at 267. "To do so, we must first determine whether the statute is ambiguous on its face." *Fordyce v. State*, 994 N.W.2d 893, 897 (Minn. 2023) (quotation omitted). "If the language of a statute is clear on its face, then the statute is unambiguous, and we apply its plain meaning." *State v. Plancarte*, 20 N.W.3d 30, 37 (Minn. 2025). "But if a statute is susceptible to more than one reasonable interpretation, then the statute is ambiguous and we may consider the canons of statutory construction." *Fordyce*, 994 N.W.2d at 897 (quotation omitted).

"The language of a statute is unambiguous when there is only one reasonable way to read the text." *Nash v. Comm'r of Pub. Safety*, 4 N.W.3d 812, 816 (Minn. 2024) (quotation omitted). We determine plain meaning "by looking to the text and textual

context of the statute." *Wocelka v. State*, 9 N.W.3d 390, 394 (Minn. 2024). And in "determining whether the statute is ambiguous, we consider the canons of interpretation listed in Minn. Stat. § 645.08 [(2024)], and interpret the statute as a whole to harmonize and give effect to all its parts." *Bakken*, 883 N.W.2d at 268 (quotation omitted).

As a threshold matter, Whitcomb does not offer more than one reasonable interpretation of the statutory text. Instead of dissecting the statutory language itself to ascribe multiple reasonable interpretations to the language selected by the legislature, Whitcomb instead argues that the legislature could not have intended to include cloud storage within the definition of a "storage system of any other type," given the state of available technology at the time this language was added to the statute. But we do not look outside of the statutory text in determining whether a statute is ambiguous. *See State v. Fugalli*, 967 N.W.2d 74, 79 (Minn. 2021) ("We do not need to resort to legislative history when a statute is unambiguous."); *Hagen v. Steven Scott Mgmt., Inc.*, 963 N.W.2d 164, 170 (Minn. 2021) (explaining that determining whether a statute is ambiguous requires analyzing "the statute's text, structure, and punctuation." (quotation omitted)). And Whitcomb has not set forth more than one reasonable interpretation of the statute based on the language chosen by the legislature. The legislature has directed that when "the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn. Stat. § 645.16. When the language of a statute is unambiguous, we disregard arguments that are "not really textual in character" but instead amount to arguments "that the Legislature could not have intended what the words say." *State v. Khalil*, 956 N.W.2d 627,

13

637 (Minn. 2021). Accordingly, Whitcomb's assertions about the state of available technology and intent of the legislature are not germane to the interpretive question presented to us.

In any event, we discern no ambiguity in the statute. The stated purpose of the statute is "to protect minors from the physical and psychological damage caused by their being used in pornographic work depicting sexual conduct which involves minors." Minn. Stat. § 617.247, subd. 1 (2020). Section 617.247, subdivision 4(a), criminalizes the possession of child pornography found in "a computer disk or computer or other electronic, magnetic, or optical storage system or a storage system *of any other type*." Minn. Stat. § 617.247, subd. 4(a) (emphasis added). In crafting this broad language, the legislature criminalized the possession of contraband—child pornography—that may be located in a variety of places. In the statute itself, the legislature described certain known locations, such as a computer or computer disk. But the legislature also included in the statute a general description of potential "other" locations where such contraband may be found, including a "storage system of *any* other type." (Emphasis added.) And "using the word any demonstrates an intent to be inclusive, not restrictive." *In re Welfare of Child of B.D.D.*, 25 N.W.3d 707, 713 (Minn. 2025) (quotation omitted). "When used in the affirmative, 'any' means every or all." *Id.* (quotation omitted). We therefore discern only one reasonable interpretation of this broad language: "a storage system of any other type" unambiguously means a storage system of *any* other type. *See* Minn. Stat. § 645.08(3) (stating "general words are construed to be restricted in their meaning by preceding particular words"); *see also State v. Sanschagrin*, 952 N.W.2d 620, 627 (Minn. 2020)

14

("[When] words particularly designating specific acts or things are followed by and associated with words of general import, the rule of ejusdem generis states that the latter are generally to be regarded as comprehending only matters of the same kind or class as those particularly stated." (quotation omitted)). When the text of a statute is susceptible to only one reasonable interpretation, we apply that meaning. *State v. Bee*, 17 N.W.3d 150, 153 (Minn. 2025).

Having determined that the applicable statute unambiguously reaches child pornography located in a storage system of any type, we conclude that the cloud storage associated with a Google account is such a storage system "of any other type." At trial, a BCA agent described a cloud storage account as a place where a person "can store [images] . . . that [they] can access from any internet capable device and still access those images in folders and videos without actually having to have that as like a digital file in [their] photo gallery." Google describes its cloud storage as a service in which "[u]sers upload data to servers via an internet connection, where it is saved on a virtual machine on a physical server," and for which Google uses remote servers to save the data.[5] Microsoft defines cloud storage as "a vast online storage space where people and businesses store their files and applications, accessible from anywhere with an internet connection."[6] And other courts confirm that a cloud account is a remote storage space, akin to physical folders

---

[5] *What is Cloud Storage?*, Google Cloud (2025), https://cloud.google.com/learn/what-is-cloud-storage [https://perma.cc/N2BA-CARL].

[6] *The cloud—what is it?* Microsoft (2025), https://azure.microsoft.com/en-us/resources/cloud-computing-dictionary/what-is-the-cloud [https://perma.cc/5GZ4-ED57].

but stored remotely. *See State v. Bowers*, 985 N.W.2d 123, 135 (Wis. Ct. App. 2022) (concluding that a cloud-based storage account is a digital version of a physical storage container); *see also Riley*, 573 U.S. at 397 ("Cloud computing is the capacity of Internet-connected devices to display data stored on remote servers rather than on the device itself."). We therefore hold that for possession of pornographic work involving a minor, cloud storage is a "storage system of any other type" within the meaning of Minn. Stat. § 617.247, subd. 4(a).

### B. The evidence is sufficient to prove that Whitcomb possessed the Google cloud account containing child pornography.

Whitcomb argues that the evidence is not sufficient to establish possession of the child pornography because a fact-finder could rationally infer from the circumstances proved that he did not actually or constructively possess the child pornography itself or the Google cloud account containing the child pornography. We disagree.

"[T]o succeed in a challenge to a verdict based on circumstantial evidence, a convicted person must point to evidence in the record that is consistent with a rational theory other than guilt." *State v. Ostrem*, 535 N.W.2d 916, 923 (Minn. 1995). Actual possession involves "direct physical control." *State v. Simion*, 745 N.W.2d 830, 842 (Minn. 2008). For constructive possession, the state must prove: (1) that the police found contraband "in a place under defendant's exclusive control to which other people did not normally have access," or (2) that, if police found the contraband in a place where others had access, "there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over [the contraband]." *State*

16

*v. Florine*, 226 N.W.2d 609, 611 (Minn. 1975). "[T]wo or more people can constructively possess an item jointly." *Harris*, 895 N.W.2d at 592 n.9. "[T]he circumstances proved must support a reasonable inference that the defendant, singly or jointly, was at the time consciously exercising dominion and control over the item." *Id.*

Whitcomb argues that the evidence was insufficient to prove that he constructively possessed the Google cloud account because (1) the state did not prove that he uploaded the photos and videos stored in the account, (2) a photo sent by Whitcomb's wife to Whitcomb's former girlfriend appeared in the account, and (3) Whitcomb's wife also lived at the home and could have accessed the account. We interpret Whitcomb's argument to be first that the circumstances proved are not consistent with a rational hypothesis of guilt and second that the circumstances proved are consistent with a rational hypothesis other than guilt.

First, the circumstances proved are consistent with a rational hypothesis that Whitcomb consciously exercised dominion and control over the Google cloud account, and thus constructively possessed the account. Specifically, the circumstances proved establish that: (1) the account was created at an IP address associated with Whitcomb's home and accessed several times from the IP address associated with Whitcomb's home; (2) Whitcomb's former girlfriend did not create the account and never went to Whitcomb's home or Whitcomb's workplace; (3) the account was accessed several times from Whitcomb's workplace, at times consistent with Whitcomb's work hours; (4) Whitcomb's wife was not known to enter the lobby of Whitcomb's workplace; (5) an IP address can be used by only one device at a time; (6) the naming convention on the account is consistent

17

with other accounts created and used by Whitcomb; (7) the folders in the account contained several photos of Whitcomb (including sexually explicit photos), Whitcomb's work, and Whitcomb's family, many of which appeared to be taken at Whitcomb's home and at his workplace; (8) Whitcomb admitted that his curiosity about child pornography "was more of a problem than he would like to admit"; and (9) Whitcomb admitted that his wife would not be responsible for child pornography because she did not like child pornography. A rational inference from these circumstances proved is that there is a strong possibility that the child pornography was located in a place where Whitcomb was at the time consciously exercising dominion and control over the contraband.

Second, the circumstances proved are inconsistent with a rational hypothesis other than guilt. While it is true, as Whitcomb notes, that absent from the circumstances proved is evidence that he uploaded or viewed the child pornography on the account, the absence of such evidence does not negate the rational inference from the circumstances proved that Whitcomb consciously exercised dominion and control over the child pornography located in the Google cloud account. And that inference is the only rational inference from the circumstances proved. That Whitcomb's wife may also have had the ability to access the Google cloud account does not negate the reasonable inference that Whitcomb consciously exercised dominion and control over the account. *See Harris*, 895 N.W.2d at 592 n.9. Nor do the circumstances proved lead to a rational inference that she did, in fact, consciously exercise dominion and control over the account. To the contrary, the circumstances proved include that Whitcomb's wife would not be responsible for child pornography because she did not like child pornography. Accordingly, the evidence is sufficient to establish that

18

Whitcomb constructively possessed the Google cloud account containing child pornography.[7]

**II.    The evidence is sufficient to prove that Whitcomb knew or should have known the content and character of the child pornography.**

Whitcomb argues that the evidence is not sufficient to prove that he knew or should have known the content and character of child pornography stored in the Google cloud account because a rational inference from the circumstances proved is that he did not view or upload the nine photos and three videos containing contraband located in the cloud. Again, we disagree.

"[U]nder Minn. Stat. § 617.247, subd. 4(a), a possessor of child [pornography] has reason to know that [child pornography] . . . involves a minor where the possessor is subjectively aware of a substantial and unjustifiable risk that the work involves a minor." *State v. Mauer*, 741 N.W.2d, 107, 115 (Minn. 2007) (quotations omitted). "Proof of either actual knowledge or reason to know that [child pornography] . . . involves a minor may also be made by circumstantial evidence." *Id.*

---

[7] Because we conclude that the evidence is sufficient to prove that Whitcomb constructively possessed the cloud contents of the Google cloud account, we do not address the parties' alternative arguments regarding actual possession. We also need not address the parties' arguments regarding possession of the child pornography itself. *See Bakken*, 883 N.W.2d at 268 (concluding that Minn. Stat. § 617.247 criminalizes both possession of pornographic work itself and possession of a computer storing the pornographic work).

19

To satisfy its burden, the state was required to prove that Whitcomb knew or had reason to know of the character of the contraband material.[8] Minn. Stat. § 617.247, subd. 4(a); *see Kamencic*, 2021 WL 1525172, at *4 ("The state was not required to prove when or how the [pornographic works involving minors] were downloaded; it needed to prove only that appellant possessed the photos and knew or had reason to know of their character."). The circumstances proved are consistent with a rational hypothesis that Whitcomb knew or should have known of the character of the contraband and inconsistent with a rational theory other than guilt. Among other circumstances proved, the Google cloud account was created from an IP address associated with the Crosby home; the account was accessed multiple times from the Crosby home and Whitcomb's workplace; Whitcomb admitted that his curiosity in child pornography "was more of a problem than he would like to admit"; and the child pornography was found in folders containing photos of Whitcomb, photos taken in the Crosby home, and photos of Whitcomb of a sexually explicit nature. The only rational hypothesis from these circumstances proved is that Whitcomb knew or should have known of the child pornography stored in the same folders. And from these circumstances proved, Whitcomb offers no reasonable alternative hypothesis. *See State v. Taylor*, 650 N.W.2d 190, 206 (Minn. 2002) ("[P]ossibilities of innocence do not require reversal of a jury verdict so long as the evidence taken as a whole makes such theories

---

[8] Whitcomb argues, without authority, that the state was required to prove that Whitcomb actually viewed or personally downloaded the contraband. We are unaware of any such requirement to establish guilt under the governing statute, and persuasive authority refutes that proposition. *See State v. Kamencic*, No. A20-0050, 2021 WL 1525172, at *4 (Minn. App. Apr. 19, 2021), *rev. denied* (Minn. Aug. 24, 2021). We cite nonprecedential cases only for their persuasive value. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

seem unreasonable." (quotation omitted)). The evidence is therefore sufficient to sustain the verdict.

## DECISION

We hold that, for possession of pornography involving a minor, cloud storage is a "storage system of any other type" within the meaning of Minn. Stat. § 617.247, subd. 4(a). The evidence is sufficient to prove that Whitcomb possessed the Google cloud account containing pornographic works involving a minor under 14 years of age and that he knew or should have known the content and character of the contraband stored in that Google cloud account. We therefore affirm the 12 convictions of possession of pornographic works involving a minor under 14 pursuant to Minn. Stat. § 617.247, subd. 4(b)(3).

**Affirmed.**